691 A.2d 377

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. DAVID MILLER, AKA PIERCE MILLER,
DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 5, 1997—Decided April 3, 1997.

388

Before Judges BAIME, LEVY and BRAITHWAITE.

*Salvatore C. Adamo*, Designated Counsel, argued the cause for appellant (*Susan L. Reisner*, Public Defender, attorney; *Mr. Adamo*, of counsel and on the brief)

*Raymond W. Hoffman*, Assistant Prosecutor, argued the cause for respondent (*Clifford J. Minor*, Essex County Prosecutor, attorney; *Mr. Hoffman*, of counsel and on the brief).

The opinion of the court was delivered by

BRAITHWAITE, J.A.D.

Following a jury trial on Essex County indictment 4368–10–91, defendant[1] appeals from his convictions of conspiracy to commit robbery, *N.J.S.A.* 2C:5–2 and *N.J.S.A.* 2C:15–1 (count one); robbery, *N.J.S.A.* 2C:15–1 (count two); and receiving stolen property, *N.J.S.A.* 2C:20–7 (count three). He was acquitted of two weapons offenses also contained in the indictment. At sentencing, counts one and three were merged with count two, and defendant was sentenced to a twenty-year prison term with a ten-year period of parole ineligibility that ran consecutively to the sentence he was then serving.

On appeal, defendant's counsel argues:

POINT I

TRIAL COURT ERRED IN NOT DISMISSING THE INDICTMENT UNDER THE INTERSTATE AGREEMENT ON DETAINER ACT.

POINT II

TRIAL COURT ERRED IN PERMITTING A SEQUESTERED WITNESS TO BE PRESENT DURING THE HEARING.

POINT III

DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

POINT IV

THE SENTENCE WAS EXCESSIVE.

In a pro se brief defendant contends:

POINT I

THE COMPLICITY BETWEEN COUNSEL, THE STATE, AND THE PROSE-CUTOR VIOLATED DEFENDANT'S DUE PROCESS OF LAW RIGHTS.

We reject all contentions raised by defendant and his counsel and affirm.

On September 24, 1992, while defendant was an inmate in a New York State prison, he made a request for a final disposition of two untried indictments in New Jersey. The first indictment, number 2286–4–91, charged defendant with receiving stolen prop-

---

[1] Defendant was indicted and tried with a co-defendant. The jury was unable to reach a verdict on the co-defendant's charges, and the trial judge declared a mistrial.

erty, *N.J.S.A.* 2C:20–7; robbery, *N.J.S.A.* 2C:15–1; and possession of an imitation firearm with an unlawful purpose, *N.J.S.A.* 2C:39–4e. The second indictment, number 4368–10–91, is the subject of this appeal. Defendant's request for a final disposition was made pursuant to the Interstate Agreement on Detainers (IAD), *N.J.S.A.* 2A:159A–1 to –15.

The Essex County Prosecutor's office received defendant's request on October 5, 1992, and the prosecutor accepted temporary custody of defendant pursuant to *N.J.S.A.* 2A:159A–5. Following the receipt of temporary custody of defendant, the State was required to try both indictments within 180 days of October 5, 1992. *See N.J.S.A.* 2A:159A–3(a). The State and defendant stipulated that the 180–day period expired after April 5, 1993.

Defendant was tried on indictment 2286–4–91 between March 2, 1993, and March 5, 1993. John Vantuno represented defendant at trial and was scheduled to represent him again at the trial on the second indictment. Defendant was convicted by a jury on all counts in the first indictment and sentenced on March 19, 1993.

Following the trial on indictment 2286–4–91, defendant was dissatisfied with Vantuno's representation. The trial judge found that defendant "requested another attorney after he was convicted on indictment 2286–4–91 on March 5, 1993. He didn't want Mr. Vantuno. That was told to me. He didn't want Vantuno to represent him again. Mr. Vantuno didn't want to represent him at that point."

The trial on indictment 4368–10–91 was scheduled for April 5, 1993. On March 31, 1993, Vantuno filed a motion to be relieved from representing defendant. The motion was granted, and an order relieving Vantuno was entered on April 7, 1993. Because the status of defendant's representation was not clear on April 5, 1993, the trial was postponed. On April 23, 1993, counsel from the public defender's office, on behalf of defendant, entered into a consent order granting "a necessary and reasonable continuance" pursuant to *N.J.S.A.* 2A:159A–3(a). Defendant's new counsel filed her formal appearance on April 30, 1993.

Defendant's trial was scheduled and adjourned on May 25, June 4, June 14, and June 21, 1993. The adjournments were occasioned by defendant "asking for new attorneys constantly." Finally, on June 29, 1993, defendant's trial commenced, and the convictions noted above followed.

After defendant filed his appeal, he moved before this court for a temporary remand to determine whether the time period under the IAD had elapsed prior to the time of his trial on indictment 4368–10–91. We granted his motion on February 26, 1996. On remand, the trial judge found that defendant had waived the statutory time frame of the IAD.

## I

During the trial on indictment 4368–10–91, the State produced the following evidence. Bayyinah Curl testified that on December 4, 1990, she drove home to Newark after classes at Rutgers University in New Brunswick with her four-year old niece, Shamika Allen. They arrived at Curl's house between 7 p.m. and 7:30 p.m. Curl parked her car, and she and the child exited the vehicle.

Curl went into the back seat of the car to get her bookbag when she heard a male voice saying, "[m]iss, your baby is going to run into the street." Curl responded that the child was not going to run into the street, and as she got out of the car, she was approached by defendant's co-defendant. Co-defendant told Curl to give him her money. She told him that she did not have any. He then reached into her jacket pockets, without permission, and took three dollars. Defendant, who was standing on the other side of her car, told her to give co-defendant her car keys. Curl had not seen defendant before co-defendant took the money from her pockets. Defendant then pulled the child closer to him, as if the child was a hostage.

Curl gave co-defendant her house keys, trying to stall for time and hoping that someone would come along to witness the incident. Co-defendant tried to start up the car and discovered that

the key would not fit. Defendant then said, "[i]f you don't give him the car keys, I'm going to blow her fucking head off," referring to the child. Curl noticed that defendant had a black object in his hand. She assumed that the object was a gun based on what defendant had said. Defendant then pointed the object at the child's head. Curl gave co-defendant her car keys, and he got into the car and started it. Defendant then released the child and entered the car.

At that point, Curl ran to the passenger's side of the car and held the door open in an effort to keep defendant and co-defendant from leaving the scene. Co-defendant was fumbling with the gears and could not get the car to operate properly. Meanwhile, defendant was trying to pull the door closed. The car went into reverse, and, because of the force generated, Curl had to let go of the door. The entire incident took about five minutes. Curl then went to her house, told her mother what had happened, and called the police. Two police officers arrived at Curl's house. She went down to the police precinct with the officers to try to identify the perpetrators, but she was unable to do so.

Four days after the incident, Curl was driving a friend's car in Newark at around 10 p.m. or 10:30 p.m. Curl saw her car and observed defendant and co-defendant inside the vehicle. Curl noticed that there were new license plates on the car, and she went home and called the detective to whom she had previously spoken, Anthony Ambrose, and gave him the new license plate number. Ambrose located Curl's car stopped at a red light at about 4:30 a.m. Ambrose and his partner approached the car and arrested defendant and co-defendant who were still inside.

Defendant, contrary to his attorney's advice, testified and corroborated the majority of Curl's account. He testified that he watched Curl drive into the parking lot. He stated that the man with him that night was a Puerto Rican man named Victor Lopez. Defendant admitted that he held the child around the neck but that he did not have a weapon in his hand; he had a "hanger, like an umbrella type." Defendant, however, denied telling Curl that

he was going to blow Allen's head off; he only said that he was going to hurt Allen. He did call Curl a "bitch" and told her to give them the car keys after she had provided them with the house keys. Defendant admitted that he changed the license plates on Curl's car after the incident.

## II

Defendant argues in his first point that the indictment should have been dismissed because he was tried beyond the 180–day period set forth in *N.J.S.A.* 2A:159A–3(a). The resolution of this issue requires a brief review of the events that caused defendant's trial to commence after the statutory deadline.

On March 5, 1993, defendant told the trial judge that he did not want Vantuno to represent him in his upcoming trial on the second indictment. On March 31, 1993, Vantuno moved to be relieved because defendant wanted new counsel following his conviction on the first indictment. On April 5, 1993, the date on which his trial was to commence, the status of defendant's legal representation was unclear. Although the order relieving Vantuno was not signed until April 7, 1993, defendant had notice of counsel's application to be relieved no later than March 31, 1993, and expressed his dissatisfaction with Vantuno's representation as early as March 5, 1993. Defendant did not oppose Vantuno's application because he wanted new counsel. Defendant essentially discharged his prior counsel but was not "going to proceed [to trial] without an attorney."

The Public Defender's office assigned defendant new counsel prior to or on April 23, 1993, shortly after Vantuno was relieved. On April 23, 1993, his new counsel consented to a continuance pursuant to *N.J.S.A.* 2A:159A–3(a). On June 29, 1993, the first day of trial on the second indictment, defense counsel moved to dismiss the indictment for failure to try defendant within the statutory time limit mandated in the IAD. The motion was denied.

Defendant argues that the continuance was invalid for three reasons. First, he contends that the attorney who signed the

consent form on his behalf did not represent him. This contention is completely without merit. *R.* 2:11–3(e)(2). His last two assertions are: (1) the consent order was submitted beyond the statutory period for the disposition of his indictment; and (2) the continuance was not granted in open court.

## A.

Defendant's main argument in this appeal is that the statutory period to try him under the IAD had elapsed when the consent order continuing that time period was signed. We conclude that the order was signed within the statutory time limit. We also conclude that part of the statutory time period was tolled for various reasons, as will be discussed *infra*. Further, our holding in *State v. Lippolis*, 107 *N.J.Super.* 137, 257 *A.*2d 705 (App.Div. 1969) (Kolovsky, J.A.D., dissenting), *rev'd on dissent*, 55 *N.J.* 354, 262 *A.*2d 203 (1970), does not allow defendant the relief he seeks.

## B.

We first address the tolling of the statutory time period. *N.J.S.A.* 2A:159A–6(a) provides, in pertinent part, as follows:

> In determining the duration and expiration dates of the time periods provided in [*N.J.S.A.* 2A:159A–3 and *N.J.S.A.* 2A:159A–4] of this agreement, *the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.*
> [*Ibid.* (emphasis added)]

■ Defendant was tried on the first indictment from March 2, 1993, until March 5, 1993, a period of four days. Under the IAD, the statutory time period will be tolled when a defendant is being tried on other charges in other jurisdictions. *See State v. Binn*, 196 *N.J.Super.* 102, 481 *A.*2d 599 (Law Div.1984), *aff'd as modified*, 208 *N.J.Super.* 443, 506 *A.*2d 67 (App.Div.), *certif. denied*, 104 *N.J.* 471, 517 *A.*2d 452 (1986); *Lippolis, supra*, 107 *N.J.Super.* at 137, 257 *A.*2d 705.

■ In the present case, however, defendant was at trial in this jurisdiction for four days of the statutory period. Defendant could

not be tried on two separate and unrelated indictments simultaneously. We hold that when a defendant must be tried on two or more separate and unrelated indictments in the same jurisdiction within the statutory period under the IAD, the time that a defendant is being tried on one indictment will toll the statutory time on the other indictments. *See Stroble v. Egeler,* 408 *F.Supp.* 630, 635 (E.D.Mich.1976), *rev'd on other grounds,* 547 *F.*2d 339 (6th Cir.1977), *cert. denied sub nom, Anderson v. Stroble,* 440 *U.S.* 940, 99 *S.Ct.* 1289, 59 *L. Ed.*2d 499 (1979); *State v. McGann,* 126 *N.H.* 316, 493 *A.*2d 452, 456 (1985).

The statutory period should have elapsed on April 5, 1993, but defendant was in trial on the first indictment for four days, March 2, 1993, through March 5, 1993. Since defendant was unable to stand trial on the second indictment during that time, the period started to run again on March 6, 1993.

It is also important to note that between March 31, 1993, and April 23, 1993, defendant did not know who his counsel would be for the second trial. Defendant's counsel had filed a motion to be relieved, which was granted on April 7, 1993. Defendant could not proceed to trial until the motion regarding his counsel was decided. In addition, after the motion was granted, defendant did not have counsel until April 23, 1993, when new counsel consented to an extension of the 180–day period.

■ We hold that the 180–day statutory limit in *N.J.S.A.* 2A:159A–3(a) is tolled starting from the time that a defendant is not represented by counsel until new counsel is either appointed or retained when the defendant has not waived his right to counsel. During this period, a defendant is unable to stand trial in accordance with *N.J.S.A.* 2A:159A–6. *See United States v. Nesbitt,* 852 *F.*2d 1502, 1512 (7th Cir.1988), *cert. denied,* 488 *U.S.* 1015, 109 *S.Ct.* 808, 102 *L.Ed.*2d 798 (1989). We conclude that is what occurred here. The State was ready to proceed to trial on April 5, 1993. Defendant, however, was unable to proceed to trial because he was unrepresented and would not go to trial without counsel.

## C.

■ Even if the statutory 180–day period had expired, the prosecutor was not barred from moving for a continuance on April 23, 1993. Our court has interpreted *N.J.S.A.* 2A:159A–5(c) to allow continuances "at any time prior to an actual entry of an order dismissing the indictment." *Lippolis, supra,* 107 *N.J.Super.* at 147, 257 *A.*2d 705 (Kolovsky, J.A.D., dissenting). Here, defense counsel did not move to dismiss the indictment until the eve of trial, and thus, there was no order dismissing the indictment on April 23, 1993, when the continuance was granted. We conclude that the State sought and obtained a continuance pursuant to *N.J.S.A.* 2A:159A–5(c) within the tolled statutory 180–day time period.

■ Furthermore, "[i]t has been properly held that since the purpose of [the IAD] is remedial, it should be accorded liberal construction in favor of prisoners within its purview." *State v. Mason,* 90 *N.J.Super.* 464, 470, 218 *A.*2d 158 (App.Div.1966). The purpose of the statute is to benefit prisoners like defendant; however, under these circumstances, we can perceive no basis to afford him relief for a failure to dispose of his indictment within 180 days. Defendant's own conduct, specifically his constant and repeated requests to change lawyers, caused the delay in the disposition. A defendant cannot intentionally act in such a manner that causes the disposition of his indictment to occur beyond the 180–day statutory period and then complain later when the State fails to try him within the statutory time frame. *See Nesbitt, supra,* 852 *F.*2d at 1516; *see also State v. Gallegan,* 117 *N.J.* 345, 355, 567 *A.*2d 204 (1989) (holding that there was no speedy trial violation for a delay in a municipal court trial when the delay was caused or requested by defendant). The trial judge did not err when he refused to dismiss the indictment.

## D.

We are also not persuaded by defendant's argument that the continuance was invalid because it was not granted in open court. The IAD provides, in pertinent part:

[F]or good cause shown *in open court, the prisoner or his counsel being present,* the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

[*N.J.S.A.* 2A:159A–3(a) (emphasis added).]

The purpose of the IAD is as follows:

The party States find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party States and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party States also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures. It is the further purpose of this agreement to provide such cooperative procedures.

[*State v. Johnson,* 188 *N.J.Super.* 416, 421–22, 457 *A.*2d 1175 (App.Div.1982), *certif. denied,* 93 *N.J.* 282, 460 *A.*2d 681 (1983)(quoting *N.J.S.A.* 2A:159A–1).]

■ We conclude that the language concerning continuances furthers the IAD's purposes. There are several reasons for the "open court" and "in the presence of defendant or his counsel" requirements. First, it ensures that a record is available for appellate review. Second, it protects a defendant's Constitutional right to speedy trial. *U.S. Const.* amend. VI; *N.J. Const.* Art. 1 / 10. Last, these requirements guarantee that the State does not extend the expiration dates arbitrarily or capriciously in derogation of defendant's rights without his knowledge and the ability to be heard. *See United States v. Ford,* 550 *F.*2d 732, 733 (2d Cir.1977), *aff'd, United States v. Mauro,* 436 *U.S.* 340, 98 *S.Ct.* 1834, 56 *L.Ed.*2d 329 (1978). These requirements permit a defendant to dispose of outstanding charges as expeditiously as possible and proceed with any treatment or rehabilitation that might be available during his incarceration. *See N.J.S.A.* 2A:159A–1.

■ Here, we are satisfied that the purposes of the IAD and the language of *N.J.S.A.* 2A:159A–3(a) regarding continuances have been met. Defendant's counsel was present. The continuance was both necessary and reasonable, and it was caused by defendant's conduct in discharging his prior counsel. Although

the continuance was granted by consent order, appellate review of the reasons for the continuance is not hampered because the record clearly supports and demonstrates the need for the continuance. Moreover, we see no speedy trial implications in light of the reasons for the continuance. We conclude, however, that the preferred practice, even with a consent order, would be for the parties to appear in court and place their reasons for consenting to a continuance on the record. Following such a procedure will avoid similar problems in future cases.

### III

As to the three remaining points raised by defendant, we have carefully reviewed the record and, in light of applicable law, conclude that defendant's contentions are insufficient to warrant a lengthy discussion in a written opinion. *R.* 2:11–3(e)(2). We add the following comments.

The judge did not abuse his discretion when he refused to sequester the assistant prosecutor who testified at the remand hearing. The judge found that the assistant prosecutor was relying on documents and his recollection of what occurred. "[T]he reason for sequestration is to prevent prospective witnesses from hearing what the other witnesses detail in their evidence, 'for the less a witness hears of another's testimony the more likely is he to declare his own knowledge simply and unbiased.'" *State v. DiModica*, 40 *N.J.* 404, 413, 192 *A.*2d 825 (1963) (citations omitted). "[S]equestration is discretionary with the trial court...." *Ibid.* No abuse of discretion occurred here.

On this record, we cannot conclude that defense counsel was ineffective. Against counsel's advice, defendant testified and confessed to his involvement in the crimes. *See Strickland v. Washington*, 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674 (1984); *State v. Fritz*, 105 *N.J.* 42, 519 *A.*2d 336 (1987).

As to defendant's sentence, we are satisfied that the trial judge's findings of fact regarding aggravating and mitigating factors were based on competent and credible evidence in the

record, that the court did not apply incorrectly the sentencing guidelines enunciated in the code, and that in applying the facts to the law, the court reached a conclusion that could have reasonably been made upon a weighing of factors. *See State v. Ghertler,* 114 *N.J.* 383, 555 *A.*2d 553 (1989); *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984).

Affirmed.