Hillsborough-northern judicial district
No. 2007-253

# THE STATE OF NEW HAMPSHIRE

v.

## RUSSELL BROWN

Argued: April 3, 2008
Opinion Issued: July 31, 2008

*Kelly A. Ayotte*, attorney general (*Susan G. Morrell*, senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Russell Brown, appeals his conviction in Superior Court (*McGuire*, J.) for conspiracy to sell controlled drugs, *see* RSA 318-B:2 (2004), :26 (Supp. 2007), arguing that the trial court erred by ruling that his speedy trial right under the Interstate Agreement on Detainers Act (IAD) had not been violated. *See* RSA ch. 606-A (2001). Because the defendant was not brought to trial within 180 days after the State received his request for final disposition of his charges, *see* RSA 606-A:1, art. III(a), we reverse and remand.

The defendant was incarcerated in Arizona when he was indicted on the charges at issue here. The State lodged a detainer against him. The defendant, pursuant to the IAD, promptly requested a speedy trial in New Hampshire. The State received the defendant's request on September 12, 2005. The defendant's charges were not resolved until October 27, 2006.

Based upon this delay of approximately thirteen months, the defendant argues that the trial court erred in not ruling that the State violated his rights under the IAD by not bringing him to trial within 180 days after the State had received his request for final disposition of his charges. *See id.* "The denial of a defendant's motion to dismiss an indictment under the [IAD] is a question of law reviewed *de novo*. The factual findings underlying

the decision are reviewed on a clearly erroneous standard." *United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992); *see also United States v. Dent*, 149 F.3d 180, 183 (3d Cir. 1998); *cf. State v. Sprague*, 146 N.H. 334, 336 (2001).

The IAD "is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000) (citations omitted); *see* RSA ch. 606-A; 18 U.S.C.A. App. § 2 (2000). *See generally* Annotation, *Validity, Construction, and Application of Interstate Agreement on Detainers*, 98 A.L.R. 3D 160 (1980). "As a congressionally sanctioned interstate compact, the IAD is a federal law subject to federal construction." *Sprague*, 146 N.H. at 336; *see Hill*, 528 U.S. at 111. Further, Article IX of the IAD requires that the IAD "be liberally construed so as to effectuate its purposes." RSA 606-A:1, art. IX; *see also Birdwell v. Skeen*, 983 F.2d 1332, 1339 (5th Cir. 1993); *cf. Allen v. Hancock*, 109 N.H. 254, 257 (1968).

"[T]he purpose of the [IAD] is to encourage the expeditious and orderly disposition of outstanding charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." *Carchman v. Nash*, 473 U.S. 716, 720 (1985) (quotation omitted); *see also Sprague*, 146 N.H. at 335-36. To achieve this purpose, Article III of the IAD "establishes a procedure by which a prisoner incarcerated in one party State . . . may demand the speedy disposition of any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner by another party State." *Carchman*, 473 U.S. at 720 (quotation omitted).

"After a detainer has been lodged against him, a prisoner may file a request for a final disposition to be made of the indictment, information, or complaint." *Hill*, 528 U.S. at 112 (quotation omitted). Upon receiving such a request, "[t]he authorities in the receiving State then must bring the prisoner to trial within 180 days." *Carchman*, 473 U.S. at 721; *see also Fex v. Michigan*, 507 U.S. 43, 52 (1993) (holding that "the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him").

The 180-day period may be extended, however, in three circumstances. First, "provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." *Hill*, 528 U.S. at 112 (quotation omitted); *see* RSA 606-A:1, art. III(a). Second, in certain circumstances, a defendant may waive his IAD speedy trial rights. *State v.*

*Dolbeare*, 140 N.H. 84, 87 (1995). Finally, "the running of [the 180-day] time period[] shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." RSA 606-A:1, art. VI(a). However, "[i]n the absence of a waiver, the defendant's inability to stand trial, or a proper continuance [as set forth above], the pending charges must be dismissed with prejudice if a prisoner is not brought to trial within the prescribed time period." *Dolbeare*, 140 N.H. at 86 (citing RSA 606-A:1, art. V(c)); *see also Hill*, 528 U.S. at 112. The burden of showing compliance with the IAD is upon the State. *Dolbeare*, 140 N.H. at 86.

In this case, the parties agree that the 180-day period began to run on September 12, 2005, the date the State received the defendant's request for final disposition of his charges. *See Fex*, 507 U.S. at 51. Because the IAD does not provide any specific method for computing the 180-day period, local time computation periods are used. *See Sprague*, 146 N.H. at 338; 5 W. LaFave et al., Criminal Procedure § 18.4(c), at 176 (3d ed. 2007). Thus, unless the State demonstrates that the 180-day time period was extended because "the defendant waive[d] his speedy trial right, the defendant [wa]s unable to stand trial, or the court grant[ed] a necessary or reasonable continuance for good cause shown in open court, the prisoner or his counsel being present," *Dolbeare*, 140 N.H. at 86 (quotations omitted), the defendant was required to have been brought to trial on or before Monday, March 13, 2006, *see* RSA 21:35 (2000) ("when a period or limit of time is to be reckoned from a day or date, that day or date shall be excluded from and the day on which an act should occur shall be included in the computation of the period or limit of time"); *Sprague*, 146 N.H. at 338 (explaining that, if the last day is a Saturday, Sunday or legal holiday, that day is excluded); *see also* Super. Ct. R. 12.

The defendant was arraigned on November 7, 2005, fifty-six days after the State received his request for final disposition of his charges. On November 8, 2005, the trial court appointed counsel for the defendant. On December 13, 2005, the court scheduled the final pretrial conference for March 10, 2006, and scheduled trial for March 20. The defendant's counsel, however, moved to withdraw due to a conflict of interest on December 15, 2005, thirty-seven days after he was appointed. The court appointed new counsel on December 21, 2005. The defendant's new counsel, however, also moved to withdraw due to a conflict on January 30, 2006, forty days after he was appointed. The trial court appointed new counsel on February 23, 2006.

On February 24, 2006, the State filed a motion requesting that the defendant be transported to the final pretrial conference scheduled for March 10, 2006, "to be present for any discussions on the record regarding

the status of counsel and the reason for the delay in bringing him to trial." In the motion, the State argued, among other things, that, given the complexities of the case, "[t]here [wa]s no possibility that [defendant's newly appointed counsel] c[ould] be prepared for trial on March 20, 2006." On March 10, 2006, the trial court held a final pretrial conference, at which the defendant, his counsel, and the State were present. At that time, the State "sought a continuance . . . due to delays in preparation (sic) and proceedings caused by the involvement of two conflicted prior counsel for the defendant." On March 23, 2006, the trial court ruled: "that good cause exists within the meaning of the [IAD], to continue the trial in this case; that the continuance is necessary and reasonable to allow for appropriate pretrial development. The clerk is directed to reschedule this matter for trial in the fall, 2006 timeframe." Trial was then scheduled for September 25, 2006.

The State argues that the 180-day period was tolled from the date the defendant was arraigned, November 7, 2005, to the date the defendant was represented by conflict-free counsel, February 23, 2006, because the defendant was "unable to stand trial" during that entire period. The defendant counters that, although the time it took the court to dispose of the motions to withdraw and appoint new counsel should be excluded from the 180-day period, the time he was represented by each counsel must be included. We agree with the defendant.

■ The parties agree that the period of time between the filing of the motions to withdraw and the appointment of new counsel should be excluded from the 180-day period. During this time period, the defendant was without counsel and, thus, "no action of consequence to the defendant c[ould have] occur[red] in the . . . case until the motion [wa]s resolved." *State v. Rieger*, 695 N.W.2d 678, 687 (Neb. Ct. App. 2005) (holding that delay when defense counsel withdrew because of conflict is excluded from IAD time calculation), *rev'd on other grounds*, 708 N.W.2d 630 (Neb. 2006). The defendant, therefore, was unable to stand trial from the time his former attorneys filed their motions to withdraw to the time new counsel was appointed. *See State v. Miller*, 691 A.2d 377, 381 (N.J. Super. Ct. App. Div. 1997) (holding that "the 180-day statutory limit in [the IAD] is tolled starting from the time that a defendant is not represented by counsel until new counsel is either appointed or retained when the defendant has not waived his right to counsel" because "[d]uring this period, a defendant is unable to stand trial in accordance with [the IAD]" (citation omitted)); *see also People v. Stone*, 712 N.W.2d 165, 168 (Mich. Ct. App. 2005) (holding that delay resulting from defense counsel's withdrawal based upon a

conflict of interest was properly excluded from 180-day time period), *appeal denied*, 712 N.W.2d 493 (Mich. 2006); *cf. State v. Schaaf*, 819 P.2d 909, 914-15 (Ariz. 1991).

■ However, between November 8, 2005, and February 23, 2006, the defendant was represented by counsel for seventy-seven days. Nothing in the record suggests that, during those seventy-seven days, each of the defendant's former attorneys was not representing the defendant. It was not until each attorney learned of the conflict of interest that the defendant was unable to stand trial; presumably, each attorney moved to withdraw as soon as he discovered the conflict of interest. The State has cited, and we have found, no authority supporting the proposition that, although the defendant was represented by counsel for seventy-seven days between November 8, 2005, and February 23, 2006, those seventy-seven days must also be excluded from the 180-day period. Accordingly, these seventy-seven days are included within the 180-day time period.

Adding these seventy-seven days to the fifty-six days between the State's receipt of the defendant's request for final disposition and the defendant's arraignment, as of February 23, 2006, 133 days of the 180-day period had elapsed. The trial court continued the trial fifteen days later on March 10, 2006. Thus, as of March 10, 2006, 148 days of the 180-day period had elapsed, leaving thirty-two days to bring the defendant to trial. The parties agree that the 180-day period was tolled from March 10, 2006, the day the court granted the continuance, to September 25, 2006, the date to which trial was postponed as a result of the continuance. *See* RSA 606-A:1, art. III(a).

During that tolled period, on April 12, 2006, the State filed a motion to join the defendant with seven other codefendants for trial. A hearing on the motion was scheduled for May 11, 2006. On May 1, 2006, the defendant, based upon his IAD speedy trial rights, moved to dismiss the indictments against him. In that motion, he expressly "request[ed] (and the state . . . assent[ed] to the request) that th[e] matter be heard at the motion's hearing scheduled for May 11, 2006."

Both parties were present at the May 11, 2006 hearing, but the defendant's motion to dismiss was not heard. According to the trial court, "[t]he Clerk's Office determined not to schedule the hearing on defendant's motion to dismiss . . . until the order on the motion to join had been made." On June 27, 2006, the court granted the State's motion to join. At that time, the judge previously assigned to the defendant's case recused himself because a conflict had arisen, and the cases were subsequently assigned to another judge. On July 24, 2006, the clerk's office *sua sponte* "determined

that [the new judge]'s calendar would not accommodate a September trial and scheduled" the trial for November 13, 2006.

After the court granted the State's motion to join, a hearing on the defendant's motion to dismiss was scheduled for August 3, 2006. On August 1, 2006, the defendant moved to continue the hearing, and the trial court granted the motion the same day. The hearing was then rescheduled for September 26, 2006. The trial court heard the defendant's motion to dismiss on that day, and denied the motion on October 25, 2006. On October 27, 2006, the defendant filed a second motion to dismiss, which is the subject of this appeal, and asserted that his IAD speedy trial rights had been violated. That same day, the parties resolved the defendant's charges, but preserved the issues presented in the defendant's motions to dismiss. On January 4, 2007, the trial court denied the second motion to dismiss.

As explained above, the 180-day period was tolled from March 10 to September 25, 2006, leaving thirty-two days to bring the defendant to trial. To comply with the IAD, trial needed to begin by October 26, 2006. The defendant argues that the date upon which the parties resolved the charges, October 27, 2006, did not comply with the IAD.

The State contends that the time period from September 25 to October 27, 2006, was properly tolled under the IAD. Specifically, the State asserts that "the defendant was present during the [May 11, 2006] hearing on the motion to join, and was advised at that time that the [trial] court's decision on the motion could affect the expected trial dates." Relying upon Article III(a) of the IAD permitting "any necessary or reasonable continuance," see RSA 606-A:1, art. III(a), the State contends that the trial "[c]ourt's continuance of the September 25 trial date was a reasonable exercise of discretion to accommodate the State's motion to consolidate, and the trial court's recusal."

The defendant counters that "the manner in which the [trial] court continued the case from September 25 to November 13 violated the IAD" because "th[e] continuance was not for 'good cause,' and was not granted in 'open court.' " Specifically, the defendant asserts that "[t]he record does not support the proposition that no judge could hear his case before" the expiration of the 180-day period, and, thus, "there was [not] 'good cause' to continue his case beyond the 180-day time frame." Second, he contends that, even if good cause supported the continuance, "neither [he], nor his counsel, was present when the court, *sua sponte,* continued the case," and, therefore, the period of delay between September 25 and October 27, 2006, is included within the 180-day period.

Article III(a) of the IAD permits a court to "grant any necessary or reasonable continuance," but only if "good cause [is] shown *in open court,*

*the prisoner or his counsel being present.*" RSA 606-A:1, art. III(a) (emphasis added); *see also Birdwell*, 983 F.2d at 1336. This provision is intended "to prohibit *ex parte* and *sua sponte* continuances." *United States v. Ford*, 550 F.2d 732, 743 n.30 (2d Cir. 1977), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340 (1978). The Second Circuit has "emphasized . . . the importance of granting the defendant an opportunity to be heard before granting an extended criminal trial continuance," and has explained that "unless the defendant is given an opportunity to participate, his speedy trial rights may be whittled away in the non-adversary context of ex parte communications between the government and the court." *Id.* at 743. The Fifth Circuit has similarly held that continuances that are "granted *ex parte* or *sua sponte* or occur[] accidentally . . . thwart the purposes of the IAD[] and chisel away defendants' rights to a speedy trial under the agreement." *Birdwell*, 983 F.2d at 1339; *see also United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) (explaining that "there is no provision [in the IAD] for the district court to unilaterally and without a hearing extend the continuance—and its attendant tolling—an additional four days"); *Stroble v. Anderson*, 587 F.2d 830, 839-40 (6th Cir. 1978) (holding that informal methods of granting continuances are inconsistent with the requirements of the IAD), *cert. denied*, 440 U.S. 940 (1979); Abramson, *The Interstate Agreement on Detainers: Narrowing Its Availability and Applications*, 21 NEW ENG. J. ON CRIM. & CIV. CONFINEMENT 1, 32-33 (1995) (explaining that "a continuance granted by court officials *sua sponte* is defective").

▉ Here, although the defendant may have been aware on May 11, 2006, of the possibility that trial could be moved from September 25 to some later date after the trial court ruled upon the State's motion to join defendants, the trial court did not grant a continuance at that hearing. Nothing in the record suggests, nor does the State assert, that the defendant knew that the later date would be outside the 180-day period or that he waived his IAD speedy trial rights at any time. Moreover, when the court later issued the continuance on July 24, 2006, it did so *sua sponte* and outside the presence of the defendant and his counsel. In so doing, the court infringed upon the defendant's opportunity to "assert his right to trial . . . , be apprised of the factors that [possibly could have] render[ed] the length of the continuance reasonable or necessary[,] . . . [and] query the trial court as to why his trial could not be set" within the 180-day time period. *Conn v. State*, 831 N.E.2d 828, 832 (Ind. Ct. App. 2005) (citing *Johnson v. Stagner*, 781 F.2d 758, 763 (9th Cir. 1986)). Thus, even assuming the continuance of trial from September 25 to November 13, 2006, was for "good cause," because it was not granted in open court or in the presence of the defendant or his counsel, we conclude that the 180-day period was not tolled for the

length of this continuance. *See id.* (not reaching the issue of whether good cause supported continuance because "the IAD require[d] [defendant]'s convictions to be reversed and require[d] dismissal whe[re] continuances beyond the 180-day period [we]re not conducted in the presence of the defendant or his attorney" (citing *Mauro*, 436 U.S. at 352)).

Alternatively, the State argues that the 180-day period was tolled for the period during which the court was resolving the defendant's first motion to dismiss, *i.e.*, from May 1, 2006, to October 25, 2006. We disagree.

Section VI of the IAD provides that the 180-day time period is tolled "whenever and for so long as the prisoner is unable to stand trial." RSA 606-A:1, VI(a). The federal circuit courts of appeal use different standards in determining whether a prisoner is "unable to stand trial." *See Collins*, 90 F.3d at 1426; *United States v. Whiting*, 28 F.3d 1296, 1307 (1st Cir.), *cert. denied*, 513 U.S. 956, *and cert. denied*, 513 U.S. 994, *and cert. denied*, 513 U.S. 1009 (1994). The Fifth and Sixth Circuits "have construed that provision narrowly and held that the phrase . . . refers only to physical or mental incapacity." *Whiting*, 28 F.3d at 1307 (citing *Birdwell*, 983 F.2d at 1340-41, and *Stroble*, 587 F.2d at 838). The Seventh and Eighth Circuits have construed the phrase broadly to include those instances where a "defendant is either 'legally or administratively' unavailable." *Collins*, 90 F.3d at 1426; *see United States v. Roy*, 830 F.2d 628, 635 (7th Cir. 1987), *cert. denied*, 484 U.S. 1068 (1988); *Young v. Mabry*, 596 F.2d 339, 343 (8th Cir.), *cert. denied*, 444 U.S. 853 (1979). The Second, Fourth, and Ninth Circuits "apply[] the tolling provisions of the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)-(9)" to IAD cases. *Collins*, 90 F.3d at 1427 (citing *United States v. Cephas*, 937 F.2d 816, 819 (2d Cir. 1991), *cert. denied*, 502 U.S. 1037 (1992), and *United States v. Odom*, 674 F.2d 228, 231 (4th Cir.), *cert. denied*, 457 U.S. 1125 (1982)).

█ The First Circuit has not wholly adopted any of these interpretations. It has, however, applied one of the tolling provisions under the Speedy Trial Act, which excludes "[a]ny period of delay resulting from other proceedings concerning the defendant, including . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C.A. § 3161(h)(1)(F) (2000). Thus, the First Circuit has interpreted the phrase "unable to stand trial" "to exclude all those periods of delay occasioned by the defendant." *United States v. Taylor*, 861 F.2d 316, 321 (1st Cir. 1988) (quotation omitted), *overruled on other grounds by Alabama v. Bozeman*, 533 U.S. 146 (2001); *cf. Sprague*, 146 N.H. at 337. The Second, Fourth, Seventh, and Ninth Circuits are in accord with this construction, *see Whiting*, 28 F.3d at 1307 & n.9, and we have also previously recognized that

"[d]elays in bringing the defendant to trial caused by the defendant's request . . . are not counted towards the time limit," *Sprague*, 146 N.H. at 337.

The rationale underlying this interpretation of the phrase "unable to stand trial" is that the defendant effectively waives the 180-day limitation "during the time it takes to resolve matters raised by him." *Taylor*, 861 F.2d at 321 (citation omitted). The First Circuit, however, has noted that, under certain circumstances, "there is substantially less reason to view the filing of defense motions as open-ended waivers of the [180]-day deadline." *Id.* at 322. Thus, the First Circuit "ha[s] held out the possibility . . . that where a defendant timely advises the court that he or she is claiming protections under the IAD *and* the court takes more time than is necessary to resolve the defendant's pretrial motions, then the delay may not be fully excluded from the [180]-day clock." *United States v. Neal*, 36 F.3d 1190, 1210 (1st Cir. 1994), *cert. denied*, 519 U.S. 1012 (1996).

While, theoretically, we are not bound by the decisions of the First Circuit, we elect to follow the First Circuit on this subject. *See State v. Miller*, 155 N.H. 246, 256 (2007); *see also Sprague*, 146 N.H. at 336 ("[T]he IAD is a federal law subject to federal construction."). Although the defendant's first motion to dismiss under the IAD could have served to toll the 180-day period, at the time he filed the motion, the 180-day period was already tolled by the continuance of trial from March 10 to September 25, 2006. More significantly, the defendant's filing of his motion to dismiss did not "occasion" the period of delay from September 25 to November 13, 2006. *See Vining v. State*, 637 So. 2d 921, 925 (Fla.) (holding that, although the defendant filed a number of motions, because the original trial date never changed as a result of those motions, no delay could be attributed to the motions), *cert. denied*, 513 U.S. 1022 (1994); *Cf. State v. Smith*, 686 S.W.2d 543, 548 (Mo. Ct. App. 1985) (holding that "[t]he state did not meet its burden [under the IAD of] establish[ing] that the defendant's motions and request[s] [for discovery] delayed the trial" because: (1) "the record disclose[d] no reason why those motions could not have been disposed of within a short time after they were filed"; (2) "[t]here [wa]s no evidence the process of discovery did in fact delay the trial"; and (3) the record failed to suggest "how those pleadings could have resulted in delay").

Instead, it was the trial court's *sua sponte* continuance of trial that occasioned the delay. As the trial court's deputy clerk testified, despite the defendant's request to continue the August 3, 2006 hearing on his first motion to dismiss, but for the trial court's *sua sponte* continuance of trial from September to November, the defendant's pretrial motion to dismiss would have been decided before the September 25 trial date because "the Court would have done everything possible" to schedule the hearing before

that trial date. *Cf. Taylor*, 861 F.2d at 322 n.5 ("[W]e think it worth recognizing that the suppression motion undoubtedly would have been decided in June [before the original June 29 trial date] had the trial not been rescheduled."); *Commonwealth v. Baker*, 627 N.E.2d 469, 471 (Mass. App. Ct. 1994) ("The orderly administration of justice required that the motions be heard and determined before trial."). Thus, the delay in trial from September 25 to November 13, 2006, was not occasioned by the defendant's motion.

 Because we do not find that the defendant's first motion to dismiss occasioned the delay, the First Circuit's limited exception to the rule that "all those periods of delay occasioned by the defendant" are excluded from the 180-day time period does not apply. *Taylor*, 861 F.2d at 321; *Neal*, 36 F.3d at 1210. As stated above, because "there is substantially less reason to view the filing of defense motions as open-ended waivers of the [180]-day deadline," *Taylor*, 861 F.2d at 322, "where a defendant timely advises the court that he or she is claiming protections under the IAD *and* the court takes more time than is necessary to resolve the defendant's pretrial motions, . . . the delay may not be fully excluded from the [180]-day clock," *Neal*, 36 F.3d at 1210. Thus, the exception applies only in those instances where a defendant's motion occasions the relevant period of delay. Where, as here, the period of delay in trial from September to November was occasioned not by the defendant's motion to dismiss, but instead by the trial court's *sua sponte* continuance of trial, it is unnecessary to determine whether the defendant timely advised the trial court that he was claiming the protections of the IAD or whether the trial court took more time than necessary to resolve the defendant's motion. *See Neal*, 36 F.3d at 1210.

Because October 27, 2006, the day the parties resolved the defendant's charges, is the 181st day after the State received the defendant's request for final disposition of his charges, we hold that the defendant's IAD speedy trial rights were violated, and he was thus entitled to dismissal of the charges with prejudice. *See Dolbeare*, 140 N.H. at 87.

██ ██ In so holding, we recognize the difficulties inherent in both scheduling trials involving multiple defendants and managing overcrowded dockets. However, courts should be mindful of the IAD time limits when scheduling such cases, and comply with the formal methods outlined in the IAD for reasonable and necessary continuances. *See Stagner*, 781 F.2d at 763 (noting that courts have held that "scheduling problems . . . [may] not constitute 'good cause' for exceeding the IAD's time limits"); *Smith*, 686 S.W.2d at 548 (explaining that the rule that, "in general, an overcrowded docket is not *per se* good cause to extend the [IAD] time period . . . is generally recognized and followed" (quotation omitted)); *see also Ford*, 550

F.2d at 743. Similarly, prosecuting authorities should not only be attentive to the IAD deadlines and procedures, but also should bear in mind their burden of showing compliance with the IAD. *See Com. v. Mayle*, 780 A.2d 677, 682 (Pa. Super. Ct. 2001). We emphasize that the purpose of the IAD is "to provide for the expeditious disposition of outstanding charges against persons imprisoned in other jurisdictions," and the IAD "mandate[s] that [it] be liberally construed so as to effectuate its purposes." *Birdwell*, 983 F.2d at 1339 (citations omitted); *see also Miller*, 691 A.2d at 382 ("[I]t has been properly held that since the purpose of the IAD is remedial, it should be accorded liberal construction in favor of prisoners within its purview. The purpose of the statute is to benefit prisoners . . . ." (quotation omitted)).

Accordingly, we reverse the trial court's ruling on the defendant's second motion to dismiss, and remand for proceedings consistent with this opinion.

*Reversed and remanded.*

GALWAY and HICKS, JJ., concurred; BRODERICK, C.J., with whom DALIANIS, J., joined, concurred in part and dissented in part.

BRODERICK, C.J., concurring in part and dissenting in part. I agree with the majority that the seventy-seven days that the defendant was represented by counsel, who later withdrew, must be included in calculating the 180-day time period under the Interstate Agreement on Detainers (IAD). *See* RSA ch. 606-A (2001). I also agree that the trial court's *sua sponte* decision to continue the trial date from September 25, 2006, to November 13, 2006, did not toll the running of the time period, for the reasons stated in the majority's opinion.

I write separately because I disagree that this continuance rendered the eventual resolution of this case, which occurred on October 27, 2006, untimely under the IAD. The defendant agrees that for the purposes of his appeal, the date upon which he stipulated to resolve the case, October 27, 2006, is the end date by which the 180-day period must be measured. The issue before this court, therefore, is whether the October 27, 2006 date was within the 180-day period.

The parties concur that the 180-day period was tolled from March 10, 2006, the date upon which the trial court granted a continuance, to September 25, 2006, the date to which the trial was postponed as a result of the continuance. They dispute whether the time period was tolled also from September 25, 2006, to October 27, 2006. The majority concludes that although the trial court was resolving the defendant's motion to dismiss during this period, the 180-day period was not tolled because, in July 2006, the trial court *sua sponte* continued the trial to November 13, 2006. In this way, the majority reasons, the defendant did not "occasion the delay" from

September 25, 2006, to October 27, 2006. The majority focuses unduly, I believe, upon the word "occasion," leading it to a conclusion that conflicts with our own case law, precedent from the First Circuit Court of Appeals as well as precedent from the majority of other jurisdictions under which a defendant is deemed "unable to stand trial" for periods during which a defense motion is pending.

Article VI(a) of the IAD provides: "In determining the duration and expiration dates of the time periods provided in Article[] III . . . of this agreement, the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." RSA 606-A:1, art. VI(a). "The court having jurisdiction over the matter determines whether the inmate is unable to stand trial. If so, the court subtracts from the total number of days elapsed the number of days the inmate is unable to stand trial to determine if the time period has been exceeded." Abramson, *The Interstate Agreement on Detainers: Narrowing Its Availability and Applications*, 21 NEW ENG. J. ON CRIM. & CIV. CONFINEMENT 1, 35 (1995).

The predominant view among federal circuit courts of appeal is that a defendant is "unable to stand trial" for the purposes of the IAD for all time periods during which a defense motion is pending. *United States v. Whiting*, 28 F.3d 1296, 1307 (1st Cir.), *cert. denied*, 513 U.S. 956, *and cert. denied*, 513 U.S. 994, *and cert. denied*, 513 U.S. 1009 (1994). This includes the time it takes the court to resolve such motions. *United States v. Neal*, 36 F.3d 1190, 1210 (1st Cir. 1994), *cert. denied*, 519 U.S. 1012 (1996). The filing of a defense motion stops the clock under the IAD. *See United States v. Walker*, 924 F.2d 1, 5 (1st Cir. 1991). The clock does not begin to run again until the motion is resolved. *Id.*

This way of looking at the phrase "unable to stand trial" is borrowed from the Federal Speedy Trial Act, which excludes from computing the time within which an information or indictment must be filed or a trial must commence "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F) (2000); *see Walker*, 924 F.2d at 5. The IAD and the Federal Speedy Trial Act are related statutes that serve the same purpose. *See United States v. Cephas*, 937 F.2d 816, 819 (2d Cir. 1991), *cert. denied*, 502 U.S. 1037 (1992). Accordingly, federal courts in the Second, Fourth and Ninth Circuit Courts of Appeal have ruled that these acts should be construed consistently. *See id.*; *see also United States v. Odom*, 674 F.2d 228, 231 (4th Cir.), *cert. denied*, 457 U.S. 1125 (1982); *United States v. Collins*, 90 F.3d 1420, 1427 (9th Cir. 1996). The First Circuit concurs with these circuits, at least with respect to tolling for any delay resulting from a pretrial defense motion. *See Walker*, 924 F.2d at 5.

In *Whiting*, for instance, the First Circuit Court of Appeals concluded that the IAD clock was stopped during the time it took for the trial court to resolve the defendant's pretrial motions, including his motion to dismiss the federal indictment on IAD grounds. *Whiting*, 28 F.3d at 1307. Although the court noted that it had previously "held out the possibility that the time involved in disposing of a motion might not all be excluded where the defendant timely advised the [trial] court that he . . . claimed the protection of the IAD *and* the [trial] court took more time than was necessary to resolve the motion," the court ruled that in this case, the defendant offered "no specifics that would lead [the court] to conclude . . . that the district court was slothful in acting on defense motions." *Id.*

We have also deemed defendants "unable to stand trial" for all periods of time during which defense motions are pending, including a reasonable period of time to resolve such motions. *See State v. McGann*, 126 N.H. 316, 322-23 (1985). For example, in *McGann*, we ruled that the 180-day period was tolled from June 11, 1984, to August 7, 1984, because this is the time it took the trial court to resolve the defendant's motion to suppress. *Id.* at 322. We further ruled that the defendant's motion to dismiss the indictments under the IAD, which he filed on August 6, 1984, tolled the 180-day limitation until "all the issues on the motion to dismiss" were resolved. *Id.* at 323.

Like the defendant in *Whiting*, the defendant in this case has failed to offer any specifics that would lead me to conclude that the trial court was slothful in acting on his motion to dismiss. The defendant here filed his first motion to dismiss on May 1, 2006. This motion was discussed only ten days later, at a hearing on a motion to consolidate. At that time, the defendant conceded that his motion did not require an evidentiary hearing and indicated that he understood that the trial court would not have time to hear his motion that day. He requested that the court hear his motion at a later date.

The trial court scheduled the motion to be heard on August 2, 2006, a little over one month after it decided the motion to consolidate. On August 1, 2006, however, the defendant requested a continuance, which the trial court granted the same day. The new hearing date was set for September 26, 2006. The trial court issued its decision denying the defendant's motion to dismiss twenty-nine days later, on October 25, 2006.

A delay from May 1, 2006, to August 2, 2006, to hear a motion to dismiss is not, in my view, unduly long, particularly in this case where the 180-day period was already tolled until September 25, 2006. Nor did the trial court take undue time to decide the motion once it was heard; it decided the motion in only twenty-nine days. *See Neal*, 36 F.3d at 1210 (finding that twenty-eight-day delay was not longer than necessary). Indeed, the

defendant's motion would undoubtedly have been decided earlier but for *his* August request for a continuance. In these circumstances, I cannot conclude that the trial court took longer than necessary to resolve the defendant's first motion to dismiss. *See United States v. Taylor*, 861 F.2d 316, 321-22 (1st Cir. 1988), *overruled on other grounds by Alabama v. Bozeman*, 533 U.S. 146 (2001). As the First Circuit has observed:

> [I]t [is] inappropriate for [an appellate court] to scrutinize each defense motion for the purpose of deciding whether a judge should have been able to dispose of it in two days, two weeks or two months. Many factors affect a judge's readiness to render a decision, and [an appellate court] would overstep [its] role were [it] to intrude routinely into the trial judge's deliberative process.

*Id.* at 321-22.

In contrast to the majority, I believe that the trial court's *sua sponte* continuance was a non-event. As the majority has aptly explained, because the trial court issued the continuance *sua sponte*, as opposed to in open court, the continuance did not stop the IAD clock from running. What *did* stop the clock from running initially was the continuance granted on March 10, 2006, as this was a continuance granted for good cause in open court. Had the defendant not moved to dismiss, the clock would have begun running on September 26, 2006, the day after the date to which the trial was postponed. But, because of the defendant's motion to dismiss, the IAD clock was stopped from September 26, 2006, until October 25, 2006, when the court resolved the motion. Because the 180-day statutory time period was tolled for an additional twenty-nine days, resolving the case on October 27, 2006, did not violate the defendant's statutory right to a speedy trial as this date was well within the 180-day statutory period.

The majority opinion rests upon the premise that a defense motion that causes no actual delay of a trial date does not trigger the tolling provision of the IAD. *See United States v. Rodriguez*, 63 F.3d 1159, 1166 (1st Cir. 1995). For this proposition, the majority relies upon state court decisions that do not follow the law of the First Circuit. The law in the First Circuit as well as other federal circuit courts of appeal, however, is that with respect to the similar tolling provision under the Federal Speedy Trial Act, the exclusion of time during which a defense motion is pending is "automatic," and does not depend upon any showing of actual delay. *Id.* (citing cases from Third, Fourth and Seventh Circuit Courts of Appeal). By ruling that the exclusion of time for a defense motion does depend upon a showing of actual delay in the trial date, the majority has created a divergence between the IAD and the Federal Speedy Trial Act, which is contrary to federal law under which these acts are to be construed together.

While the majority purports to follow the First Circuit, I believe that its decision is contrary to the law in that circuit, as well as to our own case law. For all of the above reasons, therefore, I respectfully dissent from the majority's conclusion that the October 27, 2006 date was outside of the 180-day period under the IAD.

DALIANIS, J., joins the opinion of BRODERICK, C.J.