NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2017-0569


THE STATE OF NEW HAMPSHIRE

v.

HJALMAR BJORKMAN

Argued:  October 11, 2018
Opinion Issued:  November 28, 2018


Gordon J. MacDonald, attorney general (Stephen D. Fuller, senior assistant attorney general, on the memorandum of law and orally), for the State.


Eric S. Wolpin, assistant appellate defender, of Concord, on the brief and orally, for the defendant.


LYNN, C.J.  The defendant, Hjalmar Bjorkman, appeals his conviction following a jury trial in the Superior Court (MacLeod, J.) on one count of using computer services for a prohibited purpose, see RSA 649-B:4, I(a) (2016).  The defendant challenges the trial court's denial of his motion to dismiss, contending that jury selection does not fulfill the requirement under the Interstate Agreement on Detainers (IAD) that a defendant be "brought to trial" within 180 days of filing a request for final disposition.  We affirm.

The following facts are derived from the record. While being held at a correctional facility in Vermont on an unrelated matter, the defendant was indicted in New Hampshire on the charge that forms the basis of this appeal. After learning of the indictment, the defendant filed a "request for final disposition" under the IAD. See RSA 606-A:1, III(a) (2001). This request was received by the State on January 17, 2017.

Jury selection for the defendant's trial was held on July 10, 2017, within 180 days from the court's receipt of the defendant's request for disposition. Eight days later, the defendant filed a motion to dismiss, arguing that his case had not been "brought to trial" within the time period required by the IAD, which he stated had lapsed the day before, on July 17. The State objected, contending, among other things, that jury selection amounted to being "brought to trial" within the meaning of the IAD. On July 21, 2017, the trial court held a hearing on the motion. At the hearing, the defendant asserted that "the commencement of trial occurs" after jury selection, "when the case is called, the [d]efendant is brought before the court, the jury is . . . sworn, and the case begins."

The trial court issued an oral decision on the defendant's motion to dismiss, ruling "as a matter of law that the trial began . . . at the time of jury selection," which the court deemed a "critical stage" in the trial. The court explained that at jury selection, counsel for both parties "engaged in direct attorney conducted voir dire with the jury," wherein they raised anticipated issues for trial. The court also noted that once a jury has been empaneled, a defendant no longer has the right to proceed with a bench trial. In so ruling, the trial court relied on federal case law interpreting the Speedy Trial Act (STA), see 18 U.S.C. §§ 3161 et seq. (2012), reasoning that the IAD is "intertwined" with the constitutional right to a speedy trial, and that for purposes of the STA "a jury trial commences . . . when the court begins voir dire." The court also distinguished IAD cases from those involving double jeopardy, explaining that the two categories encompass "different legal concepts" and seek "to address different issues of protection for the [d]efendant." Finally, the trial court stated that "as a practical matter," voir dire in complex cases could "go on for days, perhaps a week or more," making it "difficult" to comply with the defendant's interpretation of the IAD.

Following his conviction, the defendant asked the trial court to reconsider its denial of his motion to dismiss. The defendant argued that "the [c]ourt's reliance on federal case law construing the [STA] was misplaced" because the STA uses different terminology and has different legislative intent than the IAD. The trial court denied the defendant's motion to reconsider, and this appeal followed.

The denial of the defendant's motion to dismiss an indictment under the IAD presents a question of law, which we review de novo. State v. Nelson, 161

N.H. 58, 61 (2010). As a congressionally sanctioned interstate compact, the IAD is a federal law subject to federal construction. State v. Sprague, 146 N.H. 334, 336 (2001).

"The IAD is a compact entered into by 48 States, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." State v. Brown, 157 N.H. 555, 557 (2008) (quotation omitted). Under Article III of the IAD, a person imprisoned in a party state who has a detainer lodged against him in another party state "may file a request for a final disposition to be made of the indictment, information, or complaint." Id. (quotation omitted). The statute mandates that the prisoner "shall be brought to trial within 180 days" of receipt of this request by "the prosecuting officer and the appropriate court." RSA 606-A:1, III(a) (emphasis added); see Brown, 157 N.H. at 557. In the absence of a waiver,[1] the defendant's inability to stand trial, or a proper continuance, the pending charges must be dismissed with prejudice if a prisoner is not brought to trial within the prescribed time period. State v. Dolbeare, 140 N.H. 84, 86 (1995). The burden of showing compliance with the IAD is upon the State. Brown, 157 N.H. at 558.

Both parties agree that January 17, 2017 serves as the commencement date of the 180-day time limit. Therefore, the only issue before us is whether the defendant was "brought to trial" for purposes of the IAD when the jury was selected on July 10, 2017. We hold that he was. The defendant asserts that the phrase "brought to trial" for purposes of the IAD refers to the proceedings that follow jury selection which involve "the calling of witness[es], the hearing of evidence, and the resolution of the controversy in question." We disagree.

Although the phrase "brought to trial" is not defined in the IAD, the legislature set forth the statute's purpose in Article I:

> The party states find that charges outstanding against a prisoner,
> detainers based on untried indictments, informations or
> complaints, and difficulties in securing speedy trial of persons

---

[1] At oral argument, there was discussion about whether the defendant's agreement to a trial date outside of the IAD's time limit amounted to waiver. Under our case law, "mere silence by the defendant and his attorney when the trial date is set does not amount to waiver" of the IAD's time requirements. Dolbeare, 140 N.H. at 86. Based on the record before us — which does not include the trial court's "e-mail," mentioned at argument, proposing the trial date, or evidence of the parties' assent to that trial date — there is no indication of waiver by the defendant. We note, however, that the United States Supreme Court, in a decision issued after Dolbeare, held that defense counsel could waive a defendant's right to be brought to trial within the IAD's 180-day period by affirmatively agreeing to a trial date outside of that time period. New York v. Hill, 528 U.S. 110, 112-13, 115 (explaining that defense counsel waived defendant's rights under the IAD by responding, "That will be fine, Your Honor," when asked by trial court whether proposed trial date worked for defendant). See also Dolbeare, 140 N.H. at 87 (acknowledging that the IAD's time requirements may present "situations where the prisoner attempts to manipulate the system").

already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments.

RSA 606-A:1, I (emphasis added). In addition, the legislative history "emphasizes that a primary purpose of the Agreement is to protect prisoners against whom detainers are outstanding." Cuyler v. Adams, 449 U.S. 433, 448-49 (1981). As the congressional reports state:

[A] prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing.

H.R. Rep. No. 91-1018, at 3 (1970); S. Rep. No. 91-1356, at 3 (1970), reprinted in 1970 U.S.C.C.A.N. 4864, 4866.

Although we agree with the defendant that the IAD's purpose "is to benefit prisoners," Brown, 157 N.H. at 566 (quotation omitted), we are not persuaded by his argument that the STA has dual purposes (benefitting both a defendant's right to a speedy trial and society's interest in prompt dispositions) while the IAD does not. We believe, instead, that there are substantial similarities between the two statutes, warranting consistent interpretation. Indeed, both the IAD and the STA "provide for detaining a defendant imprisoned in another jurisdiction and require his prompt transfer and trial," "contain statutory limitations on the time that may elapse before a defendant is brought to trial," "permit extensions of time," and "impose the sanction of dismissal of the charges when their limitations are transgressed." United States v. Odom, 674 F.2d 228, 231 (4th Cir. 1982). In setting forth these requirements, we conclude that Congress enacted both statutes "to serve the best interest of the public and the defendant by requiring the prompt disposition of criminal charges." Id.; cf. Hill, 528 U.S. at 117 (acknowledging that society "enjoy[s] some benefit from the IAD's time limits," as "[d]elay can lead to a less accurate outcome as witnesses become unavailable and memories fade").

4

While the federal courts have yet to determine when a defendant has been "brought to trial" for purposes of the IAD, the majority of the federal circuit courts have decided that, when interpreting the STA, a trial "commence[s]," see 18 U.S.C. § 3161(c)(1), "on the day the jury is empaneled, even if not sworn." United States v. Rodriguez, 63 F.3d 1159, 1164 (1st Cir. 1995); accord United States v. Jones, 23 F.3d 1307, 1308 (8th Cir. 1994); Government of Virgin Islands v. Duberry, 923 F.2d 317, 320 (3d Cir. 1991); United States v. Fox, 788 F.2d 905, 908 (2d Cir. 1986); United States v. A-A-A Elec. Co., Inc., 788 F.2d 242, 246 (4th Cir. 1986); United States v. Scalf, 760 F.2d 1057, 1059 (10th Cir. 1985); United States v. Scaife, 749 F.2d 338, 343 (6th Cir. 1984); United States v. Manfredi, 722 F.2d 519, 524 (9th Cir. 1983); United States v. Howell, 719 F.2d 1258, 1262 (5th Cir. 1983); United States v. Gonzales, 671 F.2d 441, 443 (11th Cir. 1982). In addition, Oklahoma, the only other state to have decided the issue, has also held that "for purposes of the IAD, a trial commences when the jury selection begins." Bowie v. State, 816 P.2d 1143, 1147 (Okla. Crim. App. 1991). We join these courts today. See State v. Farrow, 140 N.H. 473, 475 (1995) (stating that statutes pertaining to the same subject matter "are to be considered in interpreting" one another and will be construed "so that they do not contradict each other" (quotations omitted)); see also Odom, 674 F.3d at 231 (applying "the principle that related statutes having the same purpose should be construed together" in interpreting the IAD and the STA).

In support of his argument that a defendant is not "brought to trial" under the IAD until the jury is sworn and the admission of evidence begins, the defendant relies on the meaning of "trial" in the double jeopardy context. Although "a criminal trial does not commence for purposes of the Double Jeopardy Clause until the jury is empaneled and sworn," Gomez v. United States, 490 U.S. 858, 872 (1989); see State v. Ojo, 166 N.H. 95, 98 (2014), "other constitutional rights attach before that point," Gomez, 490 U.S. at 873. Indeed, jury selection is "a critical stage of the criminal proceeding." Id. at 873 & n.26 (stating that "[i]ndications that Congress likewise considers jury selection part of a felony trial may be gleaned . . . from its passage in 1975 of the Speedy Trial Act"); see also Bowie, 816 P.2d at 1147 ("Jury selection is an intrinsic part of the trial process."). It is at voir dire that the parties first have the opportunity to introduce the jurors to the potential issues in their case. It is also when the "court may enforce a defendant's right to be tried by a jury free from . . . prejudice . . . or predisposition about the defendant's culpability." Gomez, 490 U.S. at 873 (citations omitted).

Moreover, the protections afforded defendants and the goals achieved by the IAD are distinct from those covered by double jeopardy principles. "The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury." Crist v. Bretz, 437 U.S. 28, 35-36 (1978) (explaining that the defendant's "valued right to have his trial completed by a particular tribunal

5

. . . is an interest with roots deep in the historic development of trial by jury in the Anglo-American system of criminal justice" (quotation omitted)). While we have acknowledged that "[t]he right to complete a trial before a particular tribunal is not absolute," we have allowed exceptions to this right only in the most narrow of circumstances: "when the defendant consents to the mistrial, or, if he objects, upon a finding of the trial court that there is <u>manifest necessity</u> for the act, or that the ends of public justice <u>would otherwise be defeated</u>." <u>Ojo</u>, 166 N.H. at 99-100 (emphases added) (stating that "all possible alternatives to a mistrial must be considered, employed and found wanting before declaration of a mistrial over the defendant's objection is justified" (quotation and brackets omitted)). These circumscribed exceptions do not alter the reasoning for placing a defendant in jeopardy "once he is put to trial before a jury." <u>Green v. United States</u>, 355 U.S. 184, 188 (1957). A defendant's "right to complete a trial before a particular tribunal" remains, <u>Ojo</u>, 166 N.H. at 99, and is contained within a defendant's right not to be subjected "to repeated prosecutions for the same offense," <u>United States v. Jorn</u>, 400 U.S. 470, 479 (1971). Double jeopardy protections are in place to promote "the finality of judgments," minimize the "harassing exposure to the harrowing experience of a criminal trial," and safeguard the defendant's "valued right to continue with the chosen jury." <u>Crist</u>, 437 U.S. at 38. In sum, the IAD assures prisoners that the disposition of their out-of-state charges is forthcoming, <u>see</u> RSA 606-A:1, I; S. Rep. No. 91-1356, at 3 (1970), an objective that begins at jury selection, while double jeopardy principles protect defendants from being subjected to "a second trial on the same charge," <u>Green</u>, 355 U.S. at 188, an objective that begins when the jury is empaneled and sworn. Thus, we are convinced that the concerns underlying double jeopardy principles are "wholly different" from those addressed by the IAD. <u>Cf</u>. <u>Howell</u>, 719 F.2d at 1262 (stating that "the constitutional considerations underlying the double jeopardy clause are wholly different from the premises of the Speedy Trial Act" (quotation omitted)).

Finally, the defendant points out that following jury selection, a defendant can "wait weeks for the commencement of trial," as "actions of the court or the State can interrupt the progress toward adjudication." Although we hold today that the commencement of jury selection constitutes the point when a defendant is "brought to trial" for purposes of the IAD, incident to this holding is our understanding that prosecutors and courts will act in good faith to ensure the speedy progression of all phases of trial. After all, the burden of showing compliance with the IAD is on the State, <u>Brown</u>, 157 N.H. at 558, and any improper delay in trial proceedings would contravene the IAD's purpose of securing a speedy trial for prisoners, <u>see</u> <u>Sprague</u>, 146 N.H. at 335-36.

<u>Affirmed</u>.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

6