SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## State v. Rami A. Amer (A-9-22) (086950)

**Argued March 14, 2023 -- Decided July 3, 2023**

**PATTERSON, J., writing for a unanimous Court.**

Defendant Rami A. Amer moved to dismiss his New Jersey indictment for offenses related to a series of burglaries, alleging a violation of his speedy trial rights under the Interstate Agreement on Detainers (IAD), N.J.S.A. 2A:159A-1 to -15, which is a congressionally sanctioned interstate compact addressing the transfer of a prisoner from the jurisdiction in which he is incarcerated to another jurisdiction in which he faces criminal charges.

Defendant was arrested in New Jersey in November 2016 in connection with seventeen burglaries. He was arrested the next month in Pennsylvania in connection with a series of burglaries committed in that state. In October 2017, defendant pled guilty to the charges pending against him in Pennsylvania and was incarcerated there. On February 23, 2018, the State received defendant's notice under the IAD, in which he requested the prompt disposition of his New Jersey charges. Defendant was transported from Pennsylvania to New Jersey the same day.

On May 21, 2018, defendant filed two motions to suppress, which were denied 53 days later, on July 13. During jury selection on July 24, 2018, the trial judge informed counsel that after July 31, the trial would resume on September 13, 2018. Neither party objected to that proposed schedule, but when jury selection resumed the next day, defense counsel stated that the IAD required the trial to begin on August 22, 2018, and argued that defendant's rights under the IAD would be violated if, for example, the court began a trial but "put it off [for] six months." The trial court ultimately entered an order stating that trial had commenced for IAD purposes on July 24, 2018, when jury selection began, and that the IAD's 180-day time period had been tolled between the filing and the denial of defendant's motions.

In an August 28, 2018 letter, defendant contended that the trial court had violated his rights under the IAD to a trial by August 22, 2018. Treating defendant's letter as a motion to dismiss his indictment, the trial court denied the motion. In October 2018, the jury convicted defendant on four counts. Defendant appealed, challenging in relevant part the ruling that his IAD rights were not violated.

1

The Appellate Division affirmed on that issue, holding that defense counsel waived defendant's right to be brought to trial within 180 days of his notice pursuant to the IAD. 471 N.J. Super. 331, 353, 359 (App. Div. 2022). It further concluded that defendant was "unable to stand trial" for purposes of N.J.S.A. 2A:159A-6(a) while his pretrial motions were pending; that N.J.S.A. 2A:159A-3(a)'s 180-day period for the commencement of trial was tolled during that period; and that the trial court had properly granted a continuance extending the deadline. Id. at 354.

The Court granted defendant's petition for certification, in which he challenged the Appellate Division's decision on the IAD issue. 252 N.J. 89 (2022).

**HELD:** The trial court did not violate defendant's speedy trial rights under the IAD, and it properly denied defendant's motion to dismiss his indictment. The Court does not agree with the Appellate Division that defense counsel waived defendant's rights under the IAD. But the Court affirms the Appellate Division's other determinations -- that the IAD's 180-day time period was tolled during the pendency of defendant's pretrial motions and that defendant was "brought to trial" when jury selection began prior to the deadline.

1. Two provisions of the IAD are central here. The first requires that a prisoner be brought to trial within 180 days after having delivered to the prosecution and court a written notice and request for a final disposition pursuant to N.J.S.A. 2A:159A-3(a). The 180-day period begins to run on the date that the notice is delivered to the prosecutor in the receiving state. The IAD does not specify what it means to be "brought to trial" for purposes of that provision. The second IAD provision governing this appeal is N.J.S.A. 2A:159A-6(a), which states that certain time periods in the IAD -- including the 180-day period -- "shall be tolled whenever and for as long as the prisoner is unable to stand trial." (pp. 14-18)

2. With regard to waiver, the Court notes that it was the trial judge, not defense counsel, who expressed a preference for delaying the State's presentation until September. Defense counsel conceded only that the trial could not be completed on July 31, 2018 -- nothing more -- and he consistently asserted defendant's rights during trial. Counsel did not waive defendant's rights under the IAD. (pp. 19-20)

3. Turning to the Appellate Division's holding that the 180-day period prescribed by the IAD was tolled while defendant's motions to suppress were pending because defendant was "unable to stand trial" during that period, the Court notes that Congress could have expressly stated that the phrase "unable to stand trial" as used in the IAD applies only to circumstances involving a physical or mental incapacity to stand trial, but it did not. Defendant's argument that nothing short of physical or mental incapacity satisfies the "unable to stand trial" language of N.J.S.A. 2A:159A-6(a) is further undermined by subsection (b) of that statute, which provides that no

2

IAD provision or remedy made available by the interstate compact applies "to any person who is adjudged to be mentally ill." N.J.S.A. 2A:159A-6(b). A clear majority of federal courts of appeals that have considered whether pretrial defense motions render a defendant "unable to stand trial" have answered that question in the affirmative, as have the courts of several sister states. Those federal and state decisions recognize that as a practical matter, a criminal trial ordinarily will not proceed while a pretrial motion is pending. While the defendant awaits disposition of his suppression motions, he is "unable to stand trial" for purposes of N.J.S.A. 2A:159A-6(a). (pp. 20-26)

4. The Court does not construe N.J.S.A. 2A:159A-6(a) to indefinitely toll the IAD's speedy trial provisions if a defendant subject to the interstate compact files a pretrial motion, however. Rather, the Court holds that a defendant who has filed a pretrial motion in an IAD case should be considered "unable to stand trial" under N.J.S.A. 2A:159A-6(a) during the pendency of a pretrial motion, with an important caveat: N.J.S.A. 2A:159A-3(a)'s 180-day trial deadline should not be tolled during any portion of the period in which the defendant's motion was pending that would not be considered excludable time for speedy trial purposes under Rule 3:25-4(i)(3). The Court imposes that limitation to ensure that defendants in cases governed by the IAD will not be subjected to inordinate trial delays when they file motions with the trial court. (pp. 26-28)

5. Courts in two states have previously determined that a defendant is "brought to trial" for purposes of the IAD when jury selection begins. The Court agrees, noting similar rules based on other speedy trial provisions and that double jeopardy principles are distinct from the interests addressed by the IAD. But the Court cautions trial judges to avoid prolonged recesses between voir dire and the presentation of evidence when the IAD's speedy trial provisions apply. (pp. 28-31)

6. Here, when defendant provided notice of his request for the disposition of his New Jersey offenses on February 23, 2018, N.J.S.A. 2A:159A-3(a) required that he be "brought to trial" by August 22, 2018. During the 53 days while his motions were pending, defendant was "unable to stand trial" under N.J.S.A. 2A:159A-6(a). Accordingly, the 180-day period was tolled, and the final deadline for defendant to be "brought to trial" shifted to October 13, 2018. Defendant was "brought to trial" when jury selection began on July 24, 2018 -- well in advance of the deadline set by N.J.S.A. 2A:159A-3(a), as tolled pursuant to N.J.S.A. 2A:159A-6(a). (pp. 31-33)

    **AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER; JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion.**

SUPREME COURT OF NEW JERSEY

A-9 September Term 2022

086950

State of New Jersey,

Plaintiff-Respondent,

v.

Rami A. Amer,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
471 N.J. Super. 331 (App. Div. 2022).

| Argued | Decided |
|--------|---------|
| March 14, 2023 | July 3, 2023 |

Shane D. Avidan, Designated Counsel, argued the cause
for appellant (Joseph E. Krakora, Public Defender,
attorney; Alison Perrone, Deputy Public Defender, Scott
Welfel, Assistant Deputy Public Defender, and Shane D.
Avidan, Harris Fischman, and Alexander E. Jones,
Designated Counsel, admitted pursuant to Rule 1:21-3(c),
on the briefs).

Michael C. Mellon, Special Deputy Attorney General/
Acting Assistant Prosecutor, argued the cause for
respondent (Christine A. Hoffman, Acting Gloucester
County Prosecutor, attorney; Michael C. Mellon, of
counsel and on the briefs, and Dana R. Anton, Special
Deputy Attorney General/Acting Senior Assistant
Prosecutor, on the briefs).

James A. Plaisted argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; James A. Plaisted and Joshua P. Law, on the brief).

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

The Interstate Agreement on Detainers (IAD), codified in New Jersey as N.J.S.A. 2A:159A-1 to -15, is a congressionally sanctioned interstate compact addressing the transfer of a prisoner from the jurisdiction in which he is incarcerated to another jurisdiction in which he faces criminal charges. When a jurisdiction in which the prisoner is subject to an "untried indictment, information or complaint" imposes a detainer against him, and the prisoner gives notice that he requests a transfer to that jurisdiction for a final disposition of his charges there, he must be "brought to trial within 180 days" of the receiving jurisdiction's receipt of that notice. N.J.S.A. 2A:159A-3(a).

That 180-day deadline for trial, however, may be extended in accordance with the compact's provisions. Pursuant to N.J.S.A. 2A:159A-6(a), that time period "shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." In

2

addition, the court with jurisdiction over the prisoner "may grant any necessary or reasonable continuance" for good cause, subject to conditions prescribed by the IAD.  N.J.S.A. 2A:159A-3(a).

In this appeal, defendant Rami A. Amer requested to be transferred from a Pennsylvania correctional facility to New Jersey pursuant to the IAD to face criminal charges, thus commencing the 180-day period prescribed by N.J.S.A. 2A:159A-3(a).  After his transfer, defendant filed two pretrial suppression motions, which remained pending for fifty-three days before they were denied. The trial court conducted jury selection 150 days after defendant's notice under the IAD, but the jury was not sworn and the evidence was not presented until several weeks later.

Following jury selection but before the jury was sworn, defendant moved to dismiss his indictment on the ground that the trial court violated his speedy trial rights under the IAD.  He argued that he was not brought to trial within the IAD-mandated 180 days of his request for transfer and that there was no basis to toll the IAD's speedy trial requirements.

The trial court denied defendant's motion to dismiss.  The court held that during the fifty-three days when defendant's suppression motions were pending, he was "unable to stand trial" within the meaning of N.J.S.A. 2A:159A-6(a), and the IAD's 180-day time period for defendant to be

"brought to trial" was therefore tolled. The trial court also ruled that defendant was "brought to trial" when jury selection began within the 180-day period set by N.J.S.A. 2A:159A-3(a), and that his rights under the IAD were not violated. Defendant was tried before a jury and was convicted of four offenses, and he appealed his conviction and sentence.

The Appellate Division affirmed defendant's conviction but remanded the matter to the trial court for resentencing. State v. Amer, 471 N.J. Super. 331, 359 (App. Div. 2022). The appellate court held that in a colloquy with the trial judge during jury selection, defense counsel waived defendant's right to be brought to trial within 180 days of his notice pursuant to the IAD. It further concluded that defendant was "unable to stand trial" for purposes of N.J.S.A. 2A:159A-6(a) while his pretrial motions were pending; that N.J.S.A. 2A:159A-3(a)'s 180-day period for the commencement of trial was tolled during that period; and that the trial court had properly granted a continuance extending the deadline imposed by N.J.S.A. 2A:159A-3. Id. at 354.

We granted defendant's petition for certification, and we affirm as modified the Appellate Division's judgment. We do not concur with the Appellate Division that defense counsel waived defendant's rights under the IAD. We agree with the appellate court, however, that the IAD's 180-day time period was tolled during the pendency of defendant's pretrial motions, and that

4

defendant was "brought to trial" when jury selection began prior to the deadline set by N.J.S.A. 2A:159A-3(a). We therefore conclude that the trial court did not violate defendant's speedy trial rights under the IAD, and that the court properly denied defendant's motion to dismiss his indictment.

I.

A.

On November 21, 2016, defendant was arrested in Mantua Township in connection with seventeen burglaries committed over nine days in four Gloucester County municipalities. He was released from custody on December 12, 2016.

On December 24, 2016, defendant was arrested in Philadelphia in connection with a series of burglaries committed in Philadelphia County, Pennsylvania. On January 11, 2017 and January 23, 2017, defendant was charged in the Court of Common Pleas of Philadelphia County with seventeen counts of burglary, criminal trespass, criminal mischief, and other offenses.

In indictments returned on March 29, 2017 and April 26, 2017, a Gloucester County grand jury charged defendant with thirty offenses arising from the November 2016 burglaries. In a superseding indictment, defendant was charged with seventeen counts of third-degree burglary, five counts of third-degree theft, two counts of fourth-degree theft, two counts of fourth-

5

degree attempted theft, and eleven counts of fourth-degree criminal mischief. Pursuant to N.J.S.A. 2A:159A-3(a), the Gloucester County Prosecutor's Office filed a detainer with Pennsylvania authorities on March 29, 2017.

On October 6, 2017, defendant pled guilty to the charges pending against him in Pennsylvania. He was sentenced to serve between fifty-four months and ten years in prison and was incarcerated in a Pennsylvania state corrections facility.

On February 23, 2018, the State received defendant's notice under N.J.S.A. 2A:159A-3(a), in which he requested the prompt disposition of his New Jersey charges pursuant to the IAD. Defendant was transported from Pennsylvania to New Jersey the same day.

### B.

By virtue of the State's receipt of defendant's notice under the IAD on February 23, 2018, the 180-day period set forth in N.J.S.A. 2A:159A-3(a) began to run. As the trial court acknowledged, at that point in time the IAD would have required that defendant be "brought to trial" no later than August 22, 2018.

On May 21, 2018, defendant filed two motions to suppress, one seeking suppression of evidence found in defendant's vehicle after his arrest on November 21, 2016, and the other seeking suppression of defendant's

6

statement to police on the same date, based on an alleged violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  By order and opinion dated July 13, 2018, -- fifty-three days after defendant filed the motions to suppress -- the trial court denied both motions.

To "make preliminary determinations in this case so that jury selection and trial may proceed in the most expeditious manner," the trial court conducted a pretrial conference on July 23, 2018.  The court ordered that jury selection would commence the following day.

During jury selection on July 24, 2018, the trial judge informed counsel that proceedings would continue the next day and that counsel should plan to be in court on July 31, 2018.  Anticipating a break in the trial because of the trial judge's obligations in pretrial detention matters and his planned vacation in August, as well as defense counsel's vacation scheduled for early September, the court notified counsel that after July 31, the trial would resume on September 13, 2018.  Neither party objected to that proposed schedule.

However, when jury selection resumed the next day, defense counsel stated that the IAD required the trial to begin on August 22, 2018, and argued that defendant's rights under the IAD would be violated if, for example, the court began a trial but "put it off [for] six months."  The State took the position

that the trial had already commenced and that the IAD's deadline had been tolled during the pendency of defendant's suppression motions.

The court ruled that the trial had commenced for IAD purposes on the first day of jury selection, July 24, 2018, but acknowledged that defense counsel had preserved defendant's right to assert his speedy trial rights under the IAD.

Later in the day on July 25, 2018, the prosecutor asked the trial judge whether the State should be prepared to present witnesses "next Tuesday," referring to Tuesday, July 31, 2018. The trial judge commented that if he were the attorney trying the case, he "would say let's get the jury picked and then we'll start openings when we return." The court asked counsel to state their views on the schedule, and the following exchange between the trial judge and defense counsel took place:

> DEFENSE COUNSEL: I'm concerned about time, but what happens is there's no way that this trial finishes on Tuesday --
>
> THE COURT: No.
>
> DEFENSE COUNSEL: -- at this point, I do concede.
>
> THE COURT: Right. I think it's best that we do that. I just think -- I think what that will also help is prevent, hopefully, a lot of questions about the testimony that came in that, you know, on Tuesday, you know?

8

THE STATE: And then --

DEFENSE COUNSEL: And that would extend proceedings.

The trial court then entered an order stating that trial had commenced for IAD purposes on July 24, 2018, when jury selection began, and that the IAD's 180-day time period had been tolled between May 31, 2018, when defendant filed his suppression motions, and July 13, 2018, when those motions were resolved.

On July 31, 2018, the parties completed jury selection. The trial did not resume in August 2018.

In an August 28, 2018 letter, characterized as a motion to dismiss all charges and submitted pro se, defendant contended that the trial court had violated his right under the IAD to a trial -- which, he claimed, included a final disposition of the case -- by August 22, 2018. The trial court treated defendant's letter as a motion to dismiss his indictment.

In a written opinion and order, the trial court denied defendant's motion to dismiss. The court reasoned that defendant was "unable to stand trial" under N.J.S.A. 2A:159A-6(a) during the period between the filing and the disposition of his motions to suppress, and that those motions postponed the IAD's 180-day deadline from August 22 to October 14, 2018. The court also

9

held that it had the authority to grant a continuance, on a showing of good cause, thus expanding the 180-day period set forth in the IAD. The trial court further held that trial had commenced for IAD purposes at the start of jury selection on July 24, 2018, and that the court had accordingly met its obligations under the IAD.

When the trial resumed on September 13, 2018, defendant reserved the right to reopen the issue whether his rights under the IAD had been violated.

On October 4, 2018, the jury convicted defendant of third-degree burglary, third-degree theft by unlawful taking, fourth-degree criminal mischief, and fourth-degree attempted theft by unlawful taking. The jury acquitted defendant of the remaining charges. Defendant was sentenced to an aggregate sixteen-year term of incarceration, to run consecutively to the term of incarceration that he was serving for his Pennsylvania offenses.

## C.

Defendant appealed his conviction and sentence. In his appeal, defendant challenged the trial court's ruling that his rights under the IAD were not violated by virtue of the timing of his trial.[1]

---

[1] The other issues that defendant raised before the Appellate Division -- the adequacy of the evidence presented to the jury, the trial court's denial of his motion to suppress evidence found in his vehicle, the admissibility of lay opinion testimony by a police officer, and the propriety of his sentence -- are not before the Court in this appeal.

10

The Appellate Division affirmed defendant's convictions, vacated his sentence, and remanded for resentencing.  Amer, 471 N.J. Super. at 359.  The appellate court determined that the trial judge "properly denied defendant's motion to dismiss based on an IAD violation."  Id. at 353.  The court observed that N.J.S.A. 2A:159A-3(a)'s requirement that a prisoner transferred at his own request be brought to trial within 180 days is not absolute.  It noted that the 180-day time period may be extended by a grant of a continuance on a showing of good cause, tolled because the prisoner subject to detainer is "unable to stand trial" for a portion of that period under N.J.S.A. 2A:159A-6(a), or nullified by the defendant's waiver of his rights under the IAD.  Id. at 351-53.

The Appellate Division premised its determination on three separate grounds.  First, the appellate court found that defendant waived his rights under the IAD "when his attorney conceded during jury selection on July 25, 2018 that the State should not be required to present witnesses to testify on the next scheduled court day of July 31."  Id. at 353.

Second, the Appellate Division concurred with the trial court that "the period between the filing of defendant's suppression motions and their resolution several weeks later tolled the time under the IAD for defendant to be brought to trial."  Id. at 354.  Interpreting the IAD in conjunction with the

11

time-exclusion provisions of the federal Speedy Trial Act, 18 U.S.C. § 3161, the Appellate Division viewed N.J.S.A. 2A:159A-6(a)'s extension of the IAD's 180-day deadline if the defendant is "unable to stand trial" to "'include those periods of delays caused by the defendant's own actions.'" Id. at 352 (quoting United States v. Peterson, 945 F.3d 144, 154 (4th Cir. 2019)).

Third, the Appellate Division acknowledged a trial court's authority to grant a continuance under the IAD for good cause and suggested that defendant's suppression motions constituted good cause for a continuance. Id. at 354. It declined to find an abuse of discretion in the trial court's extension of the 180-day period based on the filing of those motions. Ibid.[2]

The Appellate Division therefore concluded that defendant was brought to trial in accordance with the IAD. See id. at 350-53.

### D.

We granted defendant's petition for certification, in which he challenged the Appellate Division's decision with respect to the IAD issue. 252 N.J. 89 (2022). We also granted the applications of the Association of Criminal Defense Lawyers of New Jersey (ACDL) and the Attorney General to participate in this appeal as amici curiae.

---

[2] The Appellate Division did not reach defendant's contention that he was not "brought to trial" for purposes of N.J.S.A. 2A:159A-3(a) until September 13, 2018, when the jury was sworn and jeopardy attached.

12

II.

A.

Defendant contends that the Appellate Division erred when it concluded that defense counsel waived defendant's right to be brought to trial within the IAD's time constraints. He argues that only a physical or mental disability renders a defendant "unable to stand trial" under N.J.S.A. 2A:159A-6(a), and that his motions to suppress did not toll the IAD's 180-day period during which the court was required to bring him to trial. Defendant contends that the trial court did not grant a continuance in accordance with the procedural requirements of N.J.S.A. 2A:159A-3(a).

B.

The State counters that, by filing his suppression motions and by virtue of his counsel's comments about the schedule for the presentation of trial evidence, defendant implicitly agreed to the trial schedule set by the court. It contends that a defendant is "unable to stand trial" under N.J.S.A. 2A:159A-6(a) while his dispositive motions are pending before the trial court and that defendant's suppression motions therefore tolled the 180-day time period. The State argues that the trial court's finding of good cause for a continuance comported with the spirit of the IAD.

C.

Amicus curiae ACDL contends that defendant did not voluntarily waive his right to a trial within the time limitations set forth in the IAD. It asserts that defendant's suppression motions did not toll the 180-day period set forth in the statute, that the trial court did not grant a continuance on a showing of good cause, and that defendant's trial did not commence under the IAD until the jury was sworn on September 13, 2018.

D.

Amicus curiae the Attorney General argues that the trial court properly found that defendant was "unable to stand trial" under N.J.S.A. 2A:159A-6(a) while the court considered his motions to suppress and that defendant was "brought to trial" under 2A:159A-3(a) when jury selection commenced on July 24, 2018.

III.

A.

The IAD "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const. Art. I, § 10, cl. 3." Carchman v. Nash, 473 U.S. 716, 719 (1985). It is a compact among the federal government, forty-eight states, the District of Columbia, Puerto Rico, and the United States Virgin

Islands.  Ibid.  The IAD was adopted in New Jersey in 1958 and is codified as

N.J.S.A. 2A:159A-1 to -15.  See L. 1958, c. 12.

The IAD was "drafted in response to a variety of problems arising out of

the then unregulated system of detainers commonly used where one or more

jurisdictions had charges outstanding against a prisoner held by another

jurisdiction."  United States v. Ford, 550 F.2d 732, 737 (2d Cir. 1977).  As the

Legislature found when it codified the IAD in New Jersey, "charges

outstanding against a prisoner, detainers based on untried indictments,

informations or complaints, and difficulties in securing speedy trial of persons

already incarcerated in other jurisdictions, produce uncertainties which

obstruct programs of prisoner treatment and rehabilitation."  N.J.S.A.

2A:159A-1.  The IAD reflects each party jurisdiction's policy "to encourage

the expeditious and orderly disposition of [outstanding] charges and

determination of the proper status of any and all detainers based on untried

indictments, informations or complaints."  Ibid.

Two provisions of the IAD are central to our analysis.  The first is

Article III of the IAD, codified as N.J.S.A. 2A:159A-3.  That provision "gives

a prisoner incarcerated in one State the right to demand the speedy disposition

of 'any untried indictment, information or complaint' that is the basis of a

detainer lodged against him by another State."  Carchman, 473 U.S. at 718-

15

19.[3]  To that end, the IAD requires "[t]he warden, commissioner of corrections or other official having custody of" a prisoner to inform him about "any detainer lodged against him" and notify him of "his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based."  N.J.S.A. 2A:159A-3(c).  The compact also prescribes the method by which a prisoner provides to that official "written notice and request for final disposition," and requires the official to promptly forward the notice "to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."  Id. at (b).

Article III of the IAD requires that a prisoner

> be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint.

---

[3]  Article IV of the IAD prescribes a separate procedure by which "the appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending" may request that "a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State" be transferred to that jurisdiction's temporary custody for trial.  See N.J.S.A. 2A:159A-4(a).  Under that provision for prosecutor-initiated transfer, the time period in which the prisoner must be brought to trial is 120 days, not 180 days as in Article III.  Id. at (c).

[<u>Id.</u> at (a).][4]

The IAD does not specify what it means to be "brought to trial" for purposes

of that provision.

"[I]n the event that an action on the indictment, information or complaint

on the basis of which the detainer has been lodged is not brought to trial within

the period provided in Article III or Article IV" of the IAD, "the appropriate

court of the jurisdiction where the indictment, information or complaint has

been pending shall enter an order dismissing the same with prejudice, and any

detainer based thereon shall cease to be of any force or effect."  N.J.S.A.

2A:159A-5(c).

The court exercising jurisdiction over the matter, however, "may grant

any necessary or reasonable continuance" based on "good cause shown in open

court, the prisoner or his counsel being present."  N.J.S.A. 2A:159A-3(a).

Moreover, in certain circumstances, a defendant may be held to have waived

his right to a speedy trial under the IAD by virtue of his counsel's consent to a

trial date later than the date on which the 180-day time period expires.  <u>New</u>

---

[4]  The 180-day period begins to run on the date that the written notice is delivered to the prosecutor in the receiving state, not the date on which the prisoner begins the process by requesting that an official of the jurisdiction in which he is in custody transmit the notice to the prosecutor.  <u>See</u> <u>Fex v. Michigan</u>, 507 U.S. 43, 49 (1993) (noting that "delivery is the key concept"); <u>accord</u> <u>State v. Pero</u>, 370 N.J. Super. 203, 215 (App. Div. 2004).

17

York v. Hill, 528 U.S. 110, 112-18 (2000); see also State v. Buhl, 269 N.J. Super. 344, 357 (App. Div. 1994) (holding that a defendant who requested an adjournment of his trial until after the expiration of N.J.S.A. 2A:159A-3(a)'s 180-day period "waived his right to have the trial commence within 180 days of his request for final disposition of the pending charges").

The second IAD provision governing this appeal is Article VI, codified as N.J.S.A. 2A:159A-6. It states that "[i]n determining the duration and expiration dates" for purposes of Articles III and IV, "the running of said time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter." N.J.S.A. 2A:159A-6(a). Article VI further provides that no IAD provision or remedy made available by the compact "shall apply to any person who is adjudged to be mentally ill." Id. at (b).

The IAD "is a federal law subject to federal construction," Carchman, 473 U.S. at 719, and the interpretation of its terms "presents a question of federal law," State v. Pero, 370 N.J. Super. 203, 214 (App. Div. 2004) (quoting Cuyler v. Adams, 449 U.S. 433, 442 (1981)). Accordingly, we look to decisions of the United States Supreme Court and federal courts for guidance in interpreting the IAD. Ibid.

B.

We first consider the Appellate Division's holding that defense counsel waived defendant's rights under the IAD by virtue of his comments to the court about trial scheduling on July 25, 2018. See Amer, 471 N.J. Super. at 353.

In Hill, the United States Supreme Court observed that "no provision of the IAD prescribes the effect of a defendant's assent to delay on the applicable time limits." 528 U.S. at 114. The Court stated, however, that in accordance with general principles of waiver in criminal cases, "courts have agreed that a defendant may, at least under some circumstances, waive his right to object to a given delay under the IAD, although they have disagreed on what is necessary to effect a waiver." Ibid. The Supreme Court held in Hill that the defendant waived his speedy trial rights under the IAD when he agreed to a trial date after the conclusion of the 180-day period for a defendant to be brought to trial under Article III. Id. at 113-18; see also State v. Miller, 277 N.J. Super. 122, 128-30 (App. Div. 1994) (holding that a defendant who pled guilty and then requested, pending sentencing, a transfer back to the jurisdiction from which he had been transferred had waived his rights under the IAD by making the request to return to the original jurisdiction).

Here, the Appellate Division found a "waiver in open court" based on what the appellate court viewed to be defense counsel's concession on July 25, 2018, that the State should not be required to present witnesses on the next trial date, July 31, 2018, in order to avoid questions from the jury about any testimony presented on that date when the trial resumed in September 2018. Amer, 471 N.J. Super. at 353-54. As the trial transcript reflects, however, it was the trial judge, not defense counsel, who expressed a preference for delaying the State's presentation of testimony until trial resumed in September, given the potential for juror questions about such testimony when the trial resumed after a long delay. Defense counsel conceded only that the trial could not be completed on July 31, 2018 -- nothing more. As he had in the course of pretrial proceedings, defense counsel consistently asserted defendant's rights under the IAD during trial.

Accordingly, we respectfully disagree with the Appellate Division's view that defense counsel waived defendant's rights under the IAD. Defendant's argument that the trial court violated his speedy trial rights under the IAD was therefore preserved for appeal.

C.

We next review the Appellate Division's holding that the 180-day period prescribed by the IAD's Article III(a) was tolled while defendant's motions to

20

suppress were pending before the trial court, because defendant was "unable to stand trial" under IAD Article VI(a) during that period. See id. at 354. We consider whether Congress intended the term "unable to stand trial" in Article VI(a) to denote only prisoners whose physical or mental condition renders them unable to stand trial, or whether it envisioned that the term would apply to a broader range of settings.

In that inquiry, we apply familiar principles of statutory construction. Our "overriding goal" is to determine Congress's intent, and our analysis "thus begins with the language of the statute," affording the statute's words "their ordinary and accustomed meaning." State v. Hudson, 209 N.J. 513, 529 (2012); see also N.J.S.A. 1:1-1. "If a plain-language reading of the statute 'leads to a clear and unambiguous result, then our interpretive process is over. Only if there is ambiguity in the statutory language will we turn to extrinsic evidence.'" State v. Hupka, 203 N.J. 222, 232 (2010) (quoting Richardson v. Bd. of Trs., PFRS, 192 N.J. 189, 195-96 (2007)). We refrain from adding "a qualification that has been omitted from the statute" by its drafters. DiProspero v. Penn, 183 N.J. 477, 493 (2005).

Here, Congress could have expressly stated that the phrase "unable to stand trial" as used in Article VI applies only to circumstances involving a physical or mental incapacity to stand trial. It did not do so. Instead,

21

Congress chose general language in Article VI(a), without limiting the term "unable to stand trial" to settings involving prisoners with debilitating physical or mental conditions. See N.J.S.A. 2A:159A-6(a). We decline to impose limiting language that appears nowhere in the IAD.

Defendant's argument that nothing short of physical or mental incapacity satisfies the "unable to stand trial" language of N.J.S.A. 2A:159A-6(a) is further undermined by subsection (b) of that statute, which provides that no IAD provision or remedy made available by the interstate compact applies "to any person who is adjudged to be mentally ill." N.J.S.A. 2A:159A-6(b). It simply does not make sense that Congress would limit the "unable to stand trial" language of Article VI(a) to prisoners whose physical or mental conditions render them unable to stand trial, but entirely exclude any prisoner "adjudged to be mentally ill" from the IAD. See ibid. We conclude that the phrase "unable to stand trial" was not intended to be given the narrow construction urged by defendant.

Our plain-language reading of N.J.S.A. 2A:159A-6(a) is underscored by federal appellate case law. The United States Supreme Court has yet to directly address the precise question whether the 180-day time period of

Article III of the IAD is tolled during the pendency of pretrial motions.[5]  As the Appellate Division noted in this appeal, however, a clear majority of federal courts of appeals that have considered whether pretrial defense motions render a defendant "unable to stand trial" have answered that question in the affirmative.  See Amer, 471 N.J. Super. at 352 n.6.

In Peterson, the Fourth Circuit held that the 120-day time limit prescribed for IAD Article IV's prosecutor-initiated transfer procedure is tolled while the defendant's pretrial motions remain pending.  945 F.3d at 155. The court reasoned that the IAD's "unable to stand trial" language incorporates "'those periods of delays caused by the defendant's own actions,'" and that "a defendant's own actions include 'periods of delay occasioned by . . . motions filed on behalf of [a] defendant.'"  Id. at 154-55 (alteration and omission in original) (first quoting United States v. Ellerbe, 372 F.3d 462, 468 (D.C. Cir. 2004); and then quoting United States v. Nesbitt, 852 F.2d 1502, 1516 (7th Cir. 1988)).  As the Fourth Circuit observed, such an approach not only harmonizes the IAD with the federal Speedy Trial Act, but "also avoids creating an incentive for defendants to saddle district courts with

---

[5]  In Hill, the Supreme Court observed that it was "uncontested" that the IAD's 180-day time limit had been tolled during the pendency of several motions filed by the defendant.  528 U.S. at 112.

innumerable pretrial motions in hopes of manufacturing delays and waiting out the [IAD]'s 120-day clock." Id. at 155.

Other circuit courts of appeals agree. In Ellerbe, the D.C. Circuit noted that Article VI of the IAD "expressly directs that the period be tolled 'whenever and for as long as the prisoner is unable to stand trial,' 18 U.S.C. app. 2, § 2, art. VI(a), which courts have construed to include those periods of delays caused by the defendant's own actions." 372 F.3d at 468. The Second Circuit reached the same conclusion in United States v. Cephas, noting its previous holding that the IAD excludes "all those periods of delay occasioned by the defendant." 937 F.2d 816, 819 (2d Cir. 1991) (quoting United States v. Roy, 771 F.2d 54, 59 (2d Cir. 1985)). In Nesbitt, the Seventh Circuit held "that both the district court's grant of a continuance . . . as well as the periods of delay occasioned by the multiple motions filed on behalf of the defendant" tolled the running of the time periods set forth in Articles III and IV of the IAD. 852 F.2d at 1516. The Ninth Circuit held in United States v. Johnson that fifteen days of pretrial delay due to the defendant's motions tolled the IAD's time periods, just as it tolled the time periods set forth in the federal Speedy Trial Act. 953 F.2d 1167, 1172 (9th Cir. 1992); see also United States v. Collins, 90 F.3d 1420, 1427 (9th Cir. 1996). The Eighth Circuit similarly held in United States v. Sawyers that pretrial motions tolled the time periods

24

for the IAD. 963 F.2d 157, 162 (8th Cir. 1992). And in <u>United States v. Walker</u>, the First Circuit held that IAD Article IV's 120-day period was tolled during the pendency of the defendant's motion to suppress and other motions. 924 F.2d 1, 5 (1st Cir. 1991).[6]

Moreover, the courts of several of our sister states concur that a defendant is "unable to stand trial" pursuant to the IAD's Article VI(a) while his pretrial motions are pending. <u>See, e.g.</u>, <u>State v. Brown</u>, 953 A.2d 1174, 1181 (N.H. 2008) (holding that reasonable delay during the pendency of a defendant's pretrial motion tolls the IAD's time periods); <u>Diaz v. State</u>, 50 P.3d 166, 167-68 (Nev. 2002) (recognizing that a defendant's motion to dismiss tolls the IAD's time periods); <u>Commonwealth v. Montione</u>, 720 A.2d 738, 741 (Pa. 1998) (finding persuasive "the analysis and interpretation of the courts that held that delay occasioned by the defendant is excludable" from the

---

[6] The Fifth and Sixth Circuits have construed the IAD's "unable to stand trial" language more narrowly. In <u>Birdwell v. Skeen</u>, the Fifth Circuit concluded that the phrase "unable to stand trial" in Article VI of the IAD "was consistently and only used by federal courts to refer to a party's physical or mental ability to stand trial throughout the fifteen years prior to Congress' enacting the [IAD] in 1970. We decline to expand that phrase to encompass legal inability due to the filing of motions or requests." 983 F.2d 1332, 1340-41 (5th Cir. 1993) (footnotes omitted). And in <u>Stroble v. Anderson</u>, the Sixth Circuit held that absent a showing that the defendant "was physically or mentally disabled," the district court had erred when it found the defendant "unable to stand trial" under Article VI(a) while his motions were pending. 587 F.2d 830, 838 (6th Cir. 1978).

IAD's time limitations); State v. Batungbacal, 913 P.2d 49, 56 (Haw. 1996) (concurring with the majority of "federal courts that have construed the phrase 'unable to stand trial' as including within the [A]rticle VI tolling provision all those periods of delay occasioned by the defendant, including delays attributable to motions filed on behalf of the defendant").

We find the reasoning adopted by those courts to be compelling. Those federal and state decisions recognize that as a practical matter, a criminal trial ordinarily will not proceed while a pretrial motion is pending. Indeed, our criminal court rule addressing pretrial proceedings provides that "[a] motion made before trial shall be determined before the trial memorandum is prepared and the trial date fixed, unless the court, for good cause, orders it deferred for determination at or after trial." R. 3:10-2(b). A trial court's grant or denial of a pretrial motion to suppress such as the motions at issue here may have a profound -- if not dispositive -- impact on a defendant's prosecution and any plea negotiations. While the defendant awaits disposition of his suppression motions, he is "unable to stand trial" for purposes of N.J.S.A. 2A:159A-6(a).

We do not construe N.J.S.A. 2A:159A-6(a) to indefinitely toll the IAD's speedy trial provisions if a defendant subject to the interstate compact files a pretrial motion, however. Rule 3:25-4(i)(3), a provision of our court rules governing excludable time for speedy trial purposes following the Criminal

26

Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26, provides that "[t]he time resulting from the filing of a motion by either the prosecution or defendant" is "excluded in computing the time in which a case shall be indicted or tried," subject to the following limitations:

> (A)  If briefing, argument, and any evidentiary hearings required to complete the record are not complete within 60 days of the filing of the notice of motion, or within any longer period of time authorized pursuant to R. 3:10-2(f), any additional time shall not be excluded.
>
> (B)  Unless the court reserves its decision until the time of trial, if the court does not decide the motion within 30 days after the record is complete, any additional time during which the motion is under advisement by the court shall not be excluded unless the court finds there are extraordinary circumstances affecting the court's ability to decide the motion, in which case no more than an additional 30 days shall be excluded.
>
> (C)  If the court reserves its decision on a motion until the time of trial, the time from the reservation to disposition of that motion shall not be excluded.  When the court reserves a motion for the time of trial, the court will be obligated to proceed directly to voir dire or to opening statements after the disposition of the motion.
>
> [R. 3:25-4(i)(3)(A) to (C)].

Rule 3:25-4(i)(3) strikes an appropriate balance, in the CJRA context, between a confined defendant's interest in a speedy trial and the need to afford the court sufficient time to develop a thorough record and carefully decide

27

pretrial motions. We consider the same limitations on tolling of time periods due to the pendency of pretrial motions to be appropriate in an IAD case.

Accordingly, a defendant who has filed a pretrial motion in an IAD case should be considered "unable to stand trial" under N.J.S.A. 2A:159A-6(a) during the pendency of a pretrial motion, with an important caveat: N.J.S.A. 2A:159A-3(a)'s 180-day trial deadline should not be tolled during any portion of the period in which the defendant's motion was pending that would not be considered excludable time for speedy trial purposes under Rule 3:25-4(i)(3).[7] We impose that limitation to ensure that defendants in cases governed by the IAD will not be subjected to inordinate trial delays when they file motions with the trial court.

### D.

We briefly address the question whether a defendant is "brought to trial" for purposes of N.J.S.A. 2A:159A-3(a) when jury selection commences, as the State argues and the Appellate Division determined, or when the jury is sworn and jeopardy attaches, as defendant contends.

---

[7] As in the speedy trial setting under Rule 3:25-4(i)(3)(B), a finding of "extraordinary circumstances affecting the court's ability to decide the motion" in an IAD case warrants the addition of only 30 days to the time period for a defendant to be brought to trial.

28

Although the United States Supreme Court and the federal courts of appeals have not yet addressed that question, appellate courts in two of our sister states that are parties to the IAD have concluded that a defendant is "brought to trial" under the IAD when jury selection begins.

In State v. Bjorkman, the New Hampshire Supreme Court rejected the defendant's argument that, because jeopardy does not attach until the jury is empaneled and sworn, a defendant is not "brought to trial" under the IAD until the jury is sworn and the State presents evidence. 199 A.3d 263, 267-69 (N.H. 2018). Citing the Fourth Circuit's interpretation of the federal Speedy Trial Act in United States v. Odom, 674 F.2d 228, 231 (4th Cir. 1982), the New Hampshire Supreme Court reasoned that jury selection is part of the trial process, and that the concerns underlying double jeopardy principles are distinct from the interests addressed by the IAD. Bjorkman, 199 A.3d at 267-69. Addressing the defendant's concern about the prospect of a long delay between jury selection and the presentation of evidence, the New Hampshire Supreme Court stated that "incident to [its] holding is [the] understanding that prosecutors and courts will act in good faith to ensure the speedy progression of all phases of trial," and it noted the State's burden to demonstrate compliance with the IAD. Id. at 269.

In <u>Bowie v. State</u>, the Court of Criminal Appeals of Oklahoma similarly held that "for purposes of the IAD, a trial commences when the jury selection begins," given that "[j]ury selection is an intrinsic part of the trial process." 816 P.2d 1143, 1147 (Okla. Crim. App. 1991).

We find those courts' reasoning to be persuasive. Jury selection is not a pretrial proceeding, but a critical stage of the trial itself. <u>See</u> <u>State v. Singletary</u>, 80 N.J. 55, 62 (1979) ("Jury selection is an integral part of the process to which every criminal defendant is entitled."); <u>accord</u> <u>State v. W.A.</u>, 184 N.J. 45, 54 (2005). Federal decisions consistently hold that under the Speedy Trial Act, trial begins with voir dire. <u>See, e.g.</u>, <u>United States v. Brown</u>, 819 F.3d 800, 810 (6th Cir. 2016) ("For the purposes of the Speedy Trial Act, trial generally commences when voir dire begins."); <u>Gov't of Virgin Islands v. Duberry</u>, 923 F.2d 317, 320 (3d Cir. 1991) ("While the statute does not define 'commence,' other courts of appeals have held that for Speedy Trial Act calculations, a trial commences when voir dire begins and we will follow that rule."); <u>United States v. Fox</u>, 788 F.2d 905, 908 (2d Cir. 1986) ("Trial normally 'commences' for purposes of the [Speedy Trial] Act with the voir dire of the jury.").

The speedy trial provision of the CJRA explicitly specifies that "a trial is considered to have commenced when the court determines that the parties are

30

present and directs them to proceed to voir dire or to opening argument, or to the hearing of any motions that had been reserved for the time of trial." N.J.S.A. 2A:162-22(2)(b)(i); accord State v. D.F.W., 468 N.J. Super. 422, 435 (App. Div. 2021).

We do not view the law of double jeopardy to control here; rather, we concur with the New Hampshire Supreme Court's reasoning in Bjorkman that "the protections afforded defendants and the goals achieved by the IAD are distinct from those covered by double jeopardy principles." 199 A.3d at 268. As a general rule, we view a defendant to be "brought to trial" under N.J.S.A. 2A:159A-3(a) when jury selection begins.

That general rule, however, does not authorize trial courts to schedule jury selection far in advance of the trial's remaining stages in an effort to circumvent the IAD. We appreciate that scheduling conflicts or witness availability issues, among other considerations, may prevent a trial court from continuing a trial immediately after a jury is selected, but we caution trial judges to avoid prolonged recesses between voir dire and the presentation of evidence when the IAD's speedy trial provisions apply.

## E.

We apply the principles stated above to this appeal.

When defendant provided notice to the State of his request for the disposition of his New Jersey offenses on February 23, 2018, N.J.S.A. 2A:159A-3(a) required that he be "brought to trial" by August 22, 2018. Defendant filed his suppression motions on May 21, 2018. The trial court denied the motions fifty-three days later, on July 13, 2018. During those fifty-three days, defendant was "unable to stand trial" under N.J.S.A. 2A:159A-6(a). Accordingly, the 180-day period prescribed in N.J.S.A. 2A:159A-3(a) was tolled during those fifty-three days, and the final deadline for defendant to be "brought to trial" shifted to October 13, 2018. Defendant was "brought to trial" under N.J.S.A. 2A:159A-3(a) when jury selection began on July 24, 2018. He was convicted on October 4, 2018.

Defendant was thus "brought to trial" well in advance of the deadline set by N.J.S.A. 2A:159A-3(a), as tolled pursuant to N.J.S.A. 2A:159A-6(a).[8] We concur with the Appellate Division that the trial court did not violate defendant's rights under the IAD, and we affirm the Appellate Division's

[8] In light of our ruling, we need not reach the question whether the trial court granted a "necessary or reasonable continuance" based on "good cause shown in open court, the prisoner or his counsel being present." N.J.S.A. 2A:159A-3(a). We remind trial courts, counsel, and parties that any such continuance must be premised on a showing of good cause and must be granted in open court, with the defendant or his counsel present. See ibid.

determination that the court properly denied defendant's motion to dismiss his indictment.

## IV.

The judgment of the Appellate Division is affirmed as modified.


CHIEF JUSTICE RABNER; JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion.